IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| KELLI ANDREWS, as Administrator of the Estate of Tiffany Ann Rusher, deceased, <br><br> Plaintiff, <br><br> v. <br><br> SANGAMON COUNTY, ILLINOIS, WES BARR, LARRY BECK JR., and DOES 1-5, <br><br> Defendants. | Case No. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff, Kelli Andrews, by and through counsel, for her Complaint against Sangamon County, Wes Barr, Larry Beck Jr., and Does 1-5 (collectively, "Defendants"), and states as follows:

### I. NATURE OF THE ACTION

1. Tiffany Rusher, who was a pre-trial detainee in the Sangamon County Detention Facility ("Sangamon Jail"), suffered from severe mental illness. When she entered the Sangamon Jail in December 2016, the Defendants knew that she was severely mentally ill, that she was at high risk of suicide, and that she was in need of intensive mental health treatment. The defendants also knew, or at the very least should have known, that placing a person with Tiffany's mental state in solitary confinement would only exacerbate her deteriorated mental condition, cause severe psychological trauma, and make it more likely that Tiffany would try to kill herself.

2. Nevertheless, the defendants placed Tiffany in solitary confinement, and kept her there for more than three months. This solitary confinement caused

1

Tiffany's mental condition to deteriorate further, but the defendants failed to provide Tiffany with adequate mental health treatment, compounding the harmful effects of solitary and increasing the chance that she would try to harm herself.

3. What is more, the defendants failed to take adequate steps to guard against the possibility of suicide, making it easier for Tiffany to harm herself severely. As a direct result of defendants' actions and failures to act, Tiffany was found asphyxiated in her cell on March 18, 2017. She died on March 30, 2017, after spending 12 days on life support.

4. This is an action for compensatory, nominal, and punitive damages, with claims brought under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA") to redress violations of Tiffany's rights. Plaintiff also asserts claims against the Defendants pursuant to the Illinois Wrongful Death Act, 740 ILCS 180, and the Illinois Survival Act, 755 ILCS 5/27-6.

## II. JURISDICTION AND VENUE

5. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), as Plaintiff's claims are brought under 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act.

6. The Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims asserted in this Complaint that Plaintiff's state law claims form part of the same case or controversy.

7. Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because one or more of the defendants resides in the Central District of Illinois and all events giving rise to the claims asserted in this lawsuit arose in this judicial district.

### III.  PARTIES

8. Plaintiff's decedent is Tiffany Rusher, who at the time of her death was a twenty-seven-year-old resident of the State of Illinois. At all times relevant hereto, Tiffany was a pretrial detainee at the Sangamon Jail.

9. Plaintiff Kelli Andrews ("Plaintiff") is Tiffany Rusher's mother and is the administrator of Tiffany's estate, pursuant to an order entered by the Circuit Court for the Seventh Judicial Circuit of Illinois, Sangamon County.

10. Wes Barr is the Sheriff of Sangamon County. In this capacity, he is responsible for the operation of the Sangamon Jail, which is the pretrial detention facility—*i.e.*, the jail—of Sangamon County. This responsibility includes a duty to safely house and to provide adequate medical care for the Sangamon Jail's detainees. At all times relevant to this case, Sheriff Barr acted under color of law. He is sued in his individual and official capacities.

11. Larry Beck is the Superintendent of the Sangamon Jail. In this capacity, he is responsible for the day-to-day operation of the Sangamon Jail. This includes making cell assignments and ensuring that medical and mental health services are provided to those detainees who need such services. At all times relevant to this case, Superintendent Beck acted under color of law. He is sued in his individual capacity.

12. Does 1-5 are sued herein by fictitious names for the reason that their true names are unknown to Plaintiffs. Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of these Defendants when their identities have been ascertained. Plaintiffs are informed and believe, and based thereon allege, that these fictitiously-named defendants are responsible in some manner for the misconduct alleged herein.

13. Sangamon County provides for the budget of the Sangamon County Sheriff's Office, including the budget for the Sangamon Jail. Sangamon County is named for indemnification purposes only, pursuant to 55 ILCS §5/5-1002.

### IV. FACTS

14. On or about December 8, 2016, Tiffany was accused of battery while a patient at the McFarland Mental Health Center ("McFarland"), which is located in Springfield, Illinois. She was arrested at McFarland, and on December 15, 2016, she was transported directly from McFarland for pretrial detention at the Sangamon Jail.

15. Shortly after her arrival at the Sangamon Jail, defendants Barr, Beck, and/or Does 1-5 became aware of Tiffany's extensive mental health history, including her multiple prior suicide attempts.

16. Upon Tiffany's arrival at the Sangamon Jail, Sangamon Jail personnel received a discharge summary that had been prepared by staff at McFarland. That summary contained a comprehensive account of Tiffany's history of severe mental illness, recurrent self-harming behavior, and numerous suicide attempts. Among other things, the Discharge Summary noted the following:

4

(i) From October 19, 2014 to April 14, 2016, while incarcerated at the Logan Correctional Center in Lincoln, Illinois, Tiffany made at least ten attempts to hang herself, including by strangulation with a towel.

(ii) During the same time period, Tiffany engaged in at least twenty-seven instances of self-harming behavior, including cutting herself, biting herself, banging her head against a wall, and repeatedly swallowing inedible objects such as ink pens, toilet paper, large segments of celery and carrot sticks, eating utensils, and toothbrushes.

(iii) Due to Tiffany's self-harming behavior, Logan Correctional Center placed her on constant watch from approximately September 11, 2015 to May 3, 2016.

(iv) On May 3, 2016, Tiffany was committed directly from Logan Correctional Center to McFarland pursuant to a Court Order for Involuntary Hospitalization.

(v) Tiffany engaged in self-harming and suicidal behavior during her hospitalization at McFarland. On multiple occasions she swallowed large objects requiring endoscopic removal and on at least two occasions, in June 2016 and September 2016, she attempted self-strangulation.

(vi) McFarland provided Tiffany with mental health treatment and monitored her to protect her from harming herself.

(vii) Tiffany was involved in an altercation on December 8, 2016, which led to her battery charges and her transfer from McFarland to the

Sangamon Jail on December 15, 2016. Upon her discharge from McFarland, Tiffany's diagnoses included Depression, Antisocial Personality Disorder, and Posttraumatic Stress Disorder.

17. On December 16, 2016, the day after her admission to the Sangamon Jail, Sangamon Jail personnel received a phone call from a nurse at McFarland, who explained that Tiffany had been subject to one-to-one care at McFarland and that she had a history of attempting to asphyxiate herself.

18. All inmates entering the Sangamon Jail are supposed to undergo a medical screening, performed as the person enters the facility, and an examination completed by medical staff within the first fourteen days of incarceration.

19. Upon information and belief, Tiffany received a medical screening and underwent a full medical examination by medical staff at Sangamon Jail within the first fourteen days of her arrival at the jail, which provided Defendants with additional information about Tiffany's mental health, including her risk for suicide.

20. On January 4, 2017 and January 17, 2017, a physician at the Sangamon Jail assessed Tiffany as having Bipolar Disorder and Schizoaffective Disorder, and documented that assessment in a medical progress note.

21. On January 19, 2017, Tiffany told a nurse while in custody at the Sangamon Jail that she was depressed.

22. On February 20, 2017, Michael Shmikler, a social worker for Advanced Correctional Healthcare, an entity that provides medical services to inmates in the Sangamon Jail, treated Tiffany at the Sangamon Jail and described her as "high-risk" due to her self-harming thoughts.

6

23. Defendant Sheriff Wes Barr is responsible for oversight of the Sangamon County Sheriff's Office, which includes the Sangamon Jail.

24. Defendant Larry Beck Jr. is responsible for oversight of the day-to-day operations of the Sangamon Jail, including but not limited to detainee cell assignment; ensuring adequate medical and mental health services are provided to detainees; supervising medical staff, social workers, and other personnel; and implementing policies and procedures of the Sangamon Jail.

25. Upon information and belief, Barr, Beck, and/or Does 1-5 knew about Tiffany's mental illness, her numerous prior attempts to commit suicide, and her need for mental health treatment and constant supervision to protect her from harm.

26. Despite their actual knowledge of Tiffany's need for intense mental health treatment, defendants Barr, Beck, and/or Does 1-5 failed to arrange for meaningful treatment for Tiffany. Instead, Defendants Barr, Beck, and/or Does 1-5 arranged for Tiffany to be placed in solitary confinement, depriving her of all meaningful social contact with other people.

27. While in solitary confinement, Tiffany was deprived of all property. She was stripped naked, barred from having any undergarments or other clothing, but for an anti-suicide blanket. She was not permitted a television or radio, books, magazines, paper, pen or pencil, or anything else she could possibly have used to pass her time in jail while awaiting trial. The only thing she was permitted was a suicide blanket.

28. Tiffany remained naked and alone in solitary confinement from December 2016 through March 18, 2017.

29. Depriving anyone of meaningful social contact for longer than a few days is harmful to their mental health and is considered to be torture under internationally recognized standards.

30. Depriving a person who suffers from severe mental illness of meaningful social contact for lengthy periods of time is toxic to their mental health.

31. Depriving a person who is actively suicidal of all meaningful social contact for an extended period of time is not a method of treatment recognized by any competent medical authority. It is certain to make the person worse, not better, increasing their risk of suicide.

32. Upon information and belief, Tiffany was not under observation, as required by all recognized suicide prevention protocols. Rather, upon information and belief defendants Barr, Beck, and/or Does 1-5 had either ordered or approved covering the observation window in Tiffany's cell so that her actions inside the cell could not be observed by staff.

33. At the same time Defendants Barr, Beck, and/or Does 1-5 compounded the risk that Tiffany would harm herself by failing adequately to prevent Tiffany from accessing a number of items that she used to harm herself.

34. As a direct result of the actions and failures to act of defendants Barr, Beck, and/or Does 1-5, Tiffany further decompensated in her cell and engaged in open and obvious self-harming and suicidal behavior consistent with her diagnosis upon entering the Sangamon Jail. For example:

(i) On January 12, 2017, Tiffany swallowed a plastic spoon and was transferred from the Sangamon Jail to Memorial Medical Center in Springfield, Illinois, for treatment.

(ii) On January 19, 2017, Tiffany tried to strangle herself with a strap from a protective medical boot worn on an injured foot.

(iii) On January 29, 2017, Tiffany swallowed a toothbrush and was transferred from the Sangamon Jail to Memorial Medical Center in Springfield, Illinois, for treatment.

(iv) On February 3, 2017, Tiffany tried to swallow a whole apple core.

(v) On February 12, 2017, Tiffany swallowed mattress stuffing.

(vi) On February 24, 2017, Tiffany put toilet paper up her nose and said she could not breathe.

(vii) On March 15, 2017, Tiffany swallowed a plastic bag.

35. As a further direct result of the actions and failures to act of Defendants Barr, Beck, and/or Does 1-5, on March 18, 2017, Tiffany was deprived of oxygen to her brain for a lengthy period of time sufficient to cause irreparable damage to her brain. An autopsy later conducted by the Sangamon County Coroner noted that Tiffany "was found unresponsive in her cell, with a strip of hand towel wrapped tightly around her neck."

36. On March 18, 2017, Tiffany was transferred from Sangamon Jail to St. John's Hospital in Springfield, Illinois and was placed on life support.

37. On March 30, 2017, Tiffany died as a result of the injuries she had sustained while in Defendants' custody. An autopsy conducted by the Sangamon

County Coroner concluded that Tiffany's death was caused by self-inflicted and deliberate ligature strangulation.

### Count I: Fourteenth Amendment
**Against:** Barr (official capacity)

38. Each paragraph of this complaint is incorporated as if fully restated here.

39. Tiffany was confined under conditions that posed a substantial risk of serious harm to her health and safety, in that she was held in isolation, deprived of all meaningful social contact, deprived of all personal property, and left naked in a bare cell but for a suicide blanket for over three months.

40. Defendant Barr was deliberately indifferent to Tiffany's health and safety.

41. Defendants Barr failed to establish a system for providing necessary mental health care to severely mentally ill detainees like Tiffany.

42. Defendants Barr failed to establish a system for providing humane, non-damaging detention to severely mentally ill detainees like Tiffany.

43. Defendant Barr failed to establish policies and procedures sufficient to protect severely suicidal detainees like Tiffany from self-harm.

44. Defendant Barr failed to establish policies and procedures to ensure that suicidal detainees like Tiffany were properly observed and kept safe.

45. Defendant Barr failed to establish policies and procedures to ensure the safety of detainees like Tiffany.

46. Defendant Barr's actions and inactions caused harm to Tiffany, including severe emotional distress during the time she was confined to the jail, and ultimately her death.

### COUNT II: Fourteenth Amendment
**Against:** Barr (individual capacity), Beck (individual capacity) and Does 1-5

47. Each paragraph of this complaint is incorporated as if fully restated here.

48. Tiffany suffered from multiple, severe mental illnesses and had an extensive history of engaging in self-harming and suicidal behaviors, which included repeated attempts to hang herself and swallow inedible objects.

49. Defendants knew about Tiffany's history of mental illness, prior suicide attempts, and self-harming tendencies at Logan Correctional Center and at McFarland.

50. Defendants similarly knew about Tiffany's suicidal behavior and thoughts, self-inflicted injuries, and ongoing mental illness that existed while Tiffany was in Defendants' custody at the Sangamon Jail, such that any and all risk of Tiffany committing suicide was known and foreseeable.

51. Defendants were deliberately indifferent to Tiffany's medical needs and her risk of suicide by failing to provide Tiffany with adequate medical treatment and failing to take appropriate precautions to protect Tiffany from self-harm.

52. Defendants' failure to provide adequate medical treatment, including but not limited to a lack of constant supervision and insufficient mental health care, constituted a clear disregard of the risk to Tiffany's life.

11

53. Defendants' placement of Tiffany in solitary was also harmful in and of itself, in that it caused her to suffer severe mental anguish during her detention at Sangamon Jail.

54. Defendants' deliberate indifference to Tiffany's medical needs and her risk of suicide violated Tiffany's rights as secured by the Fourteenth Amendment. As a direct and proximate result of Defendants' deliberate indifference, Tiffany suffered mental anguish while she was detained at the Sangamon Jail, and she asphyxiated herself with a towel on March 18, 2017, and died on March 30, 2017.

**COUNT III: Americans with Disabilities Act**
**Against:** Barr (official capacity)

55. Each paragraph of this complaint is incorporated as if fully restated here.

56. Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

57. To prevent discrimination, 28 C.F.R. § 35.130(b)(7) requires a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity."

58. The Sangamon County Sheriff's Office is a public entity as defined in 42 U.S.C. § 12131(1).

59. At all times relevant to this Complaint, in light of her severe mental illness, Tiffany was a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2), and had a right not to be subjected to discrimination on the basis of her disability by Defendant.

60. Due to her mental illnesses, Tiffany frequently contemplated and engaged in suicidal behavior and could not take adequate care of herself.

61. As a detainee at the Sangamon Jail, Tiffany was wholly dependent upon Sheriff Barr for basic daily needs and appropriate accommodations, including mental health care and accommodation. Individuals in the custody of defendant are also dependent on the defendant for all of their basic daily needs, including food, exercise, and safety.

62. Under the Title II of the ADA and 28 C.F.R. § 35.130(a), Sheriff Barr is responsible for ensuring that individuals in his custody with known disabilities are provided with reasonable accommodations to prevent discrimination on the basis of disability and are not, on the basis of disability, excluded from participation in or denied the benefits of services, programs, or activities because of their disability.

63. Despite Tiffany's known and obvious disability Sheriff Barr failed to reasonably accommodate Tiffany's disability by failing to provide her with reasonably suicide-proof and humane conditions of confinement.

64. The failure of the Sheriff's Office to provide adequate mental health treatment to Tiffany failed to accommodate Tiffany's disability.

65. The isolation of Tiffany without any meaningful social contact and without any personal property constituted discrimination against Tiffany as a result of her disability.

66. As a result of the wrongful conduct of the Sheriff's Office, Tiffany's mental health condition was greatly exacerbated, and she was subjected to unnecessary pain and suffering, and she died.

**COUNT IV:  Rehabilitation Act**
**Against:**  Barr (official capacity)

67. Each paragraph of this complaint is incorporated as if fully restated here.

68. The purpose of the Rehabilitation Act is to ensure that no "qualified individual with a disability in the United States . . . shall, solely by reason of [ ] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

69. Tiffany was, at all times relevant to this complaint, a qualified individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(2), and has a right not to be subjected to discrimination on the basis of her disability. 29 U.S.C. § 794(a).

70. The Sangamon County Sheriff's Office receives Federal financial assistance within the meaning of 29 U.S.C. § 794(a).

71. The Sheriff's Office constitutes "program[s] or activit[ies]" within the meaning of 29 U.S.C. § 794(b)(1)(A)-(B) and/or (b)(2)(B) and was required to comply with the Rehabilitation Act.

72. The failure of the Sheriff's Office to provide adequate mental health treatment to Tiffany failed to accommodate Tiffany's disability.

73. The isolation of Tiffany without any meaningful social contact and without any personal property constituted discrimination against Tiffany as a result of her disability.

74. As a result of the wrongful conduct of the Sheriff's Office, Tiffany's mental health condition was greatly exacerbated, and she was subjected to unnecessary pain, suffering, and death.

### COUNT V: Wrongful Death (740 ILCS 180)
**Against:** All defendants

75. Each paragraph of this complaint is incorporated as if fully restated here.

76. Defendants had a duty to protect Tiffany from harm when such harm was reasonably foreseeable.

77. Defendants breached that duty.

78. As a result of defendants' breach of that duty, Tiffany died.

79. Tiffany's next of kin have suffered damages from the loss of Tiffany, including grief, sorrow, mental suffering, and loss of society.

### COUNT VI: Survival Act and Funeral Expenses
**Against:** All defendants

80. Each paragraph of this complaint is incorporated as if fully restated here.

81. Count VI is alleged against Defendants in their individual capacities and brought by Plaintiff as Tiffany's personal representative in her capacity as administrator of Tiffany's estate.

82. This count is brought pursuant to the Survival Act, 755 ILCS 5/27-6, for the medical, funeral and burial expenses and the pain and suffering experienced by Tiffany prior to her death.

83. As a result of one or more of the willful and wonton acts or omissions described in the previous paragraphs, Tiffany experienced suicidal thoughts, decline in mental health, agitation, mental abuse, punishment, pain and suffering, and other injuries including medical expenses prior to her death.

84. As a direct and proximate result of the death of Tiffany, the estate incurred funeral and burial expenses.

### COUNT VII: Respondeat Superior
**Against:** Barr

85. Each paragraph of this complaint is incorporated as if fully restated here.

86. Sheriff Wes Barr employed various Sangamon Jail personnel and staff who provided inadequate care to Tiffany and/or insufficiently monitored Tiffany while working in the course and scope of their employment.

87. Sheriff Wes Barr, by and through his employees, is liable for all Defendants' aforementioned unlawful acts that were the direct and proximate cause of Tiffany's injuries, and her death on March 30, 2017.

### COUNT VIII: Indemnification
**Against:** Sangamon County

88. Each paragraph of this complaint is incorporated as if fully restated here.

89. Illinois law provides that public entities are directed to pay any tort judgments for compensatory damages for which employees are liable within the scope of their employment activities.

90. Defendants Barr, Beck, and Does 1-5 were employees and agents of Defendants Sangamon County and/or the Office of the Sheriff of Sangamon County and acting within the scope of their employment in committing the misconduct described herein.

91. Sangamon County is obligated by Illinois law to pay any judgment relating to the operation of the Sangamon Jail entered against the Sangamon County Sheriff's Office, Barr, Beck, and Does 1-5.

## V. RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, for the following:

- **A.** An award of compensatory, punitive, and nominal damages;
- **B.** An award of full costs and attorneys' fees arising out of this litigation pursuant to 42 U.S.C. § 1988, the Americans with Disabilities Act, and the Rehabilitation Act, and;
- **C.** Any and other further relief this Court may deem just and appropriate.

## VI. DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: March 11, 2018                    Respectfully submitted,


                                         *s/ Alan Mills*
                                         Alan Mills - alan@uplcchicago.org
                                         Nicole Schult - nicole@uplcchicago.org
                                         Uptown People's Law Center
                                         4413 North Sheridan Rd.
                                         Chicago, Illinois 60640
                                         Tel: (773) 769-1411
                                         Fax: (773) 769-2224


                                         /s/ *Emmanuel Andre*

                                         Emmanuel Andre - eandre@northsidetlc.com
                                         Northside Transformative Law Center
                                         1543 W. Morse Ave.
                                         Chicago, IL 60626
                                         (312) 219-654


                                         /s/ *Stephen H. Weil*

                                         Stephen H. Weil – steve@weilchardon.com
                                         Alexis G. Chardon – ali@weilchardon.com
                                         Weil & Chardon LLC
                                         333 S. Wabash Ave., Suite 2700
                                         Chicago, IL 60604
                                         312-585-7404

                                         *Attorneys for Plaintiff*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Kelli Andrews, as Administrator of the Estate of Tiffany Ann Rusher, deceased

## DEFENDANTS
Sangamon County, Illinois, Wes Barr, Larry Beck Jr, and Does 1-5

**(b)** County of Residence of First Listed Plaintiff: DeWitt Illinois
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Sangamon Illinois
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Alan Mills - Uptown People's Law Center
4413 N Sheridan, Chicago, Illinois 60640
773-769-1411

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☒ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec 1983

Brief description of cause:
deliberate indifference to serious mental health condition

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE: 03/11/2018
SIGNATURE OF ATTORNEY OF RECORD: /s/ Alan Mills

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.