5487-15 TMP/BES

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

KELLI ANDREWS,                          )
                                        )
       Plaintiff,                       )
                                        )
    v.                                  )          Law No. 18-cv-01100-SEM-TSH
                                        )
SANGAMON COUNTY ILLINOIS, WES           )
BARR, LARRY BECK and DOES 1-5,          )
                                        )
       Defendants.                      )

### ANSWER TO PLAINTIFF'S COMPLAINT

NOW COME Defendants WES BARR, LARRY BECK and SANGAMON COUNTY, ILLINOIS, by THERESA M. POWELL, of HEYL, ROYSTER, VOELKER & ALLEN, P.C., their attorneys, and for their Response to Plaintiff's Complaint [d/e #1], state as follows:

### I.    NATURE OF THE ACTION

1.    Tiffany Rusher, who was a pre-trial detainee in the Sangamon County Detention Facility ("Sangamon Jail"), suffered from severe mental illness. When she entered the Sangamon Jail in December 2016, the Defendants knew that she was severely mentally ill, that she was at high risk of suicide, and that she was in need of intensive mental health treatment. The defendants also knew, or at the very least should have known, that placing a person with Tiffany's mental state in solitary confinement would only exacerbate her deteriorated mental condition, cause severe psychological trauma, and make it more likely that Tiffany would try to kill herself.

**ANSWER:    Defendants admit that Tiffany Rusher was a pre-trial detainee at certain times in the Sangamon County Jail.  Defendants admit that**

5487-15 TMP/BES

**Tiffany Rusher suffered from mental health issues.  Defendants deny the remaining allegations of paragraph 1.**

2.      Nevertheless, the defendants placed Tiffany in solitary confinement, and kept her there for more than three months. This solitary confinement caused Tiffany's mental condition to deteriorate further, but the defendants failed to provide Tiffany with adequate mental health treatment, compounding the harmful effects of solitary and increasing the chance that she would try to harm herself.

**ANSWER:     Defendants admit that Tiffany Rusher was placed in a cell by herself at certain times relevant to this lawsuit.  Defendants deny the remaining allegations of paragraph 2.**

3.      What is more, the defendants failed to take adequate steps to guard against the possibility of suicide, making it easier for Tiffany to harm herself severely. As a direct result of defendants' actions and failures to act, Tiffany was found asphyxiated in her cell on March 18, 2017. She died on March 30, 2017, after spending 12 days on life support.

**ANSWER:     Defendants deny the allegations of paragraph 3.**

4.      This is an action for compensatory, nominal, and punitive damages, with claims brought under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA") to redress violations of Tiffany's rights. Plaintiff also asserts claims against the Defendants pursuant to the Illinois Wrongful Death Act, 740 ILCS 180, and the Illinois Survival Act, 755 ILCS 5/27-6.

**ANSWER:     Defendants admit that Plaintiff is attempting to bring claims under the various acts referenced.  Defendants deny the validity of the**

5487-15 TMP/BES

claims made under each of the acts.  Defendants further deny that Plaintiff may recover more than once for any alleged injury set forth in this complaint.

## II.       JURISDICTION AND VENUE

5.       The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), as Plaintiff's claims are brought under 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act.

**ANSWER:   Defendants admit that jurisdiction and venue are proper in the Central District of Illinois.  Defendants deny that venue is proper in any other district.**

6.       The Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims asserted in this Complaint that Plaintiff's state law claims form part of the same case or controversy.

**ANSWER:   Defendants admit that the Court may assert jurisdiction over pendant state law claims pursuant to 28 U.S.C. § 1367.  Defendants deny that the Court must retain jurisdiction over state law claims.**

7.       Venue is appropriate pursuant to 28 U.S.C. § 1391(b) because one or more of the defendants resides in the Central District of Illinois and all events giving rise to the claims asserted in this lawsuit arose in this judicial district.

**ANSWER:   Defendants admit that venue is proper in the Central District of Illinois.  Defendants deny that venue is proper in any other district.**

5487-15 TMP/BES

### III.    PARTIES

8.     Plaintiff's decedent is Tiffany Rusher, who at the time of her death was a twenty-seven-year-old resident of the State of Illinois. At all times relevant hereto, Tiffany was a pretrial detainee at the Sangamon Jail.

> **ANSWER:    Defendants admit that Tiffany Rusher was born in 1989.  Defendants admit that Tiffany Rusher was a pre-trial detainee at the Sangamon County Jail at certain times relevant to this lawsuit.**

9.     Plaintiff Kelli Andrews ("Plaintiff") is Tiffany Rusher's mother and is the administrator of Tiffany's estate, pursuant to an order entered by the Circuit Court for the Seventh Judicial Circuit of Illinois, Sangamon County.

> **ANSWER:    Defendants have insufficient knowledge to admit or deny the allegations of paragraph 9.**

10.     Wes Barr is the Sheriff of Sangamon County. In this capacity, he is responsible for the operation of the Sangamon Jail, which is the pretrial detention facility—i.e., the jail—of Sangamon County. This responsibility includes a duty to safely house and to provide adequate medical care for the Sangamon Jail's detainees. At all times relevant to this case, Sheriff Barr acted under color of law. He is sued in his individual and official capacities.

> **ANSWER:    Defendants admit that Wes Barr is the Sheriff of Sangamon County. Defendants deny the remaining allegations of paragraph 10.**

11.     Larry Beck is the Superintendent of the Sangamon Jail. In this capacity, he is responsible for the day-to-day operation of the Sangamon Jail. This includes making cell assignments and ensuring that medical and mental health services are provided to those detainees

5487-15 TMP/BES

who need such services. At all times relevant to this case, Superintendent Beck acted under color of law. He is sued in his individual capacity.

**ANSWER:     Defendants admit Larry Beck is the Superintendent of the Sangamon County Jail.   Defendants admit that Defendant Beck had certain duties related to the day-to-day operation of the Sangamon County Jail.   Defendants deny that Defendant Beck had an individual and personal duty to insure medical and mental health services to detainees within the jail.   Defendants deny the remaining allegations of paragraph 11.**

12.     Does 1-5 are sued herein by fictitious names for the reason that their true names are unknown to Plaintiffs. Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of these Defendants when their identities have been ascertained. Plaintiffs are informed and believe, and based thereon allege, that these fictitiously-named defendants are responsible in some manner for the misconduct alleged herein.

**ANSWER:     Defendants make no response to paragraph 12 as it is unknown as to whom is being referred in this paragraph.**

13.     Sangamon County provides for the budget of the Sangamon County Sheriff's Office, including the budget for the Sangamon Jail. Sangamon County is named for indemnification purposes only, pursuant to 55 ILCS §5/5-1002.

**ANSWER:     Defendants accept that Sangamon County is being sued for indemnification purposes only and that such is appropriate as relates to claims against certain of its employees.**

5487-15 TMP/BES

## IV.    FACTS

14.    On or about December 8, 2016, Tiffany was accused of battery while a patient at the McFarland Mental Health Center ("McFarland"), which is located in Springfield, Illinois. She was arrested at McFarland, and on December 15, 2016, she was transported directly from McFarland for pretrial detention at the Sangamon Jail.

**ANSWER:    Defendants admit that Tiffany Rusher was charged with aggravated battery pursuant to 720 ILCS 5/12-3.05(2)(d)(2) Class 3.  Defendants admit that Tiffany Rusher was arrested and that she was transported to the Sangamon County Jail.  Defendants have insufficient knowledge to either admit or deny if Tiffany Rusher was transported "directly" after she was arrested.**

15.    Shortly after her arrival at the Sangamon Jail, defendants Barr, Beck, and/or Does 1-5 became aware of Tiffany's extensive mental health history, including her multiple prior suicide attempts.

**ANSWER:    Defendants admit that certain aspects of Tiffany Rusher's medical and mental health status was made known to certain people working in the Sangamon County Jail.  Defendants deny that each of them were made aware of all aspects of Tiffany Rusher's extensive mental health history and her multiple prior suicide attempts.  Defendants deny having information about Tiffany Rusher at all times. Defendants admit having some knowledge of her history at certain times relevant to this suit.**

5487-15 TMP/BES

16.     Upon Tiffany's arrival at the Sangamon Jail, Sangamon Jail personnel received a discharge summary that had been prepared by staff at McFarland. That summary contained a comprehensive account of Tiffany's history of severe mental illness, recurrent self-harming behavior, and numerous suicide attempts. Among other things, the Discharge Summary noted the following:

(i)     From October 19, 2014 to April 14, 2016, while incarcerated at the Logan Correctional Center in Lincoln, Illinois, Tiffany made at least ten attempts to hang herself, including by strangulation with a towel.

(ii)    During the same time period, Tiffany engaged in at least twenty-seven instances of self-harming behavior, including cutting herself, biting herself, banging her head against a wall, and repeatedly swallowing inedible objects such as ink pens, toilet paper, large segments of celery and carrot sticks, eating utensils, and toothbrushes.

(iii)   Due to Tiffany's self-harming behavior, Logan Correctional Center placed her on constant watch from approximately September 11, 2015 to May 3, 2016.

(iv)    On May 3, 2016, Tiffany was committed directly from Logan Correctional Center to McFarland pursuant to a Court Order for Involuntary Hospitalization.

(v)     Tiffany engaged in self-harming and suicidal behavior during her hospitalization at McFarland. On multiple occasions she swallowed large objects requiring endoscopic removal and on at least two occasions, in June 2016 and September 2016, she attempted self-strangulation.

5487-15 TMP/BES

(vi)     McFarland provided Tiffany with mental health treatment and monitored her to protect her from harming herself.

(vii)    Tiffany was involved in an altercation on December 8, 2016, which led to her battery charges and her transfer from McFarland to the Sangamon Jail on December 15, 2016. Upon her discharge from McFarland, Tiffany's diagnoses included Depression, Antisocial Personality Disorder, and Posttraumatic Stress Disorder.

**ANSWER:**     **Defendants admit that a discharge summary was prepared by staff at McFarland that was sent at some point to the Sangamon County Jail. Defendants deny that the summary was received by all Sangamon County Jail personnel upon Tiffany Rusher's arrival.  Defendants admit that the summary contains references to Tiffany Rusher's history of symptoms associated with mental health conditions, issues or illnesses.  Defendants admit that Plaintiff has a history of abnormal and potentially self-harming behaviors.  Defendants admit that there is a discharge summary from McFarland in the Sangamon County Jail's records.  To the extent the information alleged in paragraphs (i)-(vii) is specifically stated in the discharge summary, Defendants do not dispute that the information is contained therein.  However, to the extent the discharge summary differs in wording from any language set forth in paragraphs (i)-(vii) of paragraph 16, Defendants deny said allegations.  Defendants deny that all persons working in the Sangamon County Jail have or had access to the discharge summary.**

5487-15 TMP/BES

> **Defendants deny that they had actual or firsthand knowledge of the information contained within the summary at all times relevant.**

17.    On December 16, 2016, the day after her admission to the Sangamon Jail, Sangamon Jail personnel received a phone call from a nurse at McFarland, who explained that Tiffany had been subject to one-to-one care at McFarland and that she had a history of attempting to asphyxiate herself.

> **ANSWER:    Defendants admit that there appears to be a medical note suggesting that a nurse at the Sangamon County Jail received a call from a nurse at McFarland regarding Tiffany Rusher's care there.   Defendants deny that the person who took the call is employed by the Sangamon County Jail.   Defendants admit that the person was working for a company that was contracted to provide medical services in the Sangamon County Jail at certain times relevant to this lawsuit. Defendants admit that there is reference in the notes to Tiffany Rusher taking steps to asphyxiate herself.**

18.    All inmates entering the Sangamon Jail are supposed to undergo a medical screening, performed as the person enters the facility, and an examination completed by medical staff within the first fourteen days of incarceration.

> **ANSWER:    Defendants admit that inmates answer questions when booked into the Sangamon County Jail that relate to medical screening issues. Defendants admit that medical staff are expected to complete an exam on inmates within a certain number of days after coming to the Sangamon County Jail as specified in the contract between the jail**

5487-15 TMP/BES

**and the medical provider. Defendants admit that such exam was expected to occur within 14 days at certain times. Defendants deny that the medical screening conducted at booking/intake is required to be performed by a physician. Defendants deny that the physicians are required to immediately complete an examination.**

19.     Upon information and belief, Tiffany received a medical screening and underwent a full medical examination by medical staff at Sangamon Jail within the first fourteen days of her arrival at the jail, which provided Defendants with additional information about Tiffany's mental health, including her risk for suicide.

**ANSWER:     Defendants admit that Tiffany Rusher was medically screened at booking. Defendants admit that Tiffany Rusher was seen by medical staff within the first 14 days of her incarceration. Defendants deny that medical staff shares all aspects of an inmate's mental and/or medical condition with Jail personnel. Defendants admit that certain people were advised or made aware of Tiffany Rusher's risks for suicide and non-food item eating habit.**

20.     On January 4, 2017 and January 17, 2017, a physician at the Sangamon Jail assessed Tiffany as having Bipolar Disorder and Schizoaffective Disorder, and documented that assessment in a medical progress note.

**ANSWER:     Defendants admit that Tiffany Rusher was seen by medical and mental health staff while incarcerated at the Sangamon County Jail. Defendants admit that Tiffany Rusher was given mental health diagnoses which are set forth in her medical records. Defendants**

5487-15 TMP/BES

> **have insufficient knowledge to admit or deny whether a physician diagnosed Tiffany Rusher as having bipolar and schizophrenic disorder or whether he copied a previous diagnosis and carried it over and noted it in her medical records. Defendants deny having access to all information contained within Defendants' medical records.**

21.     On January 19, 2017, Tiffany told a nurse while in custody at the Sangamon Jail that she was depressed.

> **ANSWER:     Defendants have insufficient knowledge to either admit or deny the allegations of paragraph 21. However, if medical records reflect that Tiffany Rusher told a nurse that she was depressed, Defendants have no information to refute or dispute this documentation. Defendants deny that they were told of every medical or mental health contact between Tiffany Rusher and mental or medical health staff.**

22.     On February 20, 2017, Michael Shmikler, a social worker for Advanced Correctional Healthcare, an entity that provides medical services to inmates in the Sangamon Jail, treated Tiffany at the Sangamon Jail and described her as "high-risk" due to her self-harming thoughts.

> **ANSWER:     Defendants admit that Tiffany Rusher was classified as high risk due to Pica and her suicide attempt and reported self-harming thoughts on February 11, 2017.**

23.     Defendant Sheriff Wes Barr is responsible for oversight of the Sangamon County Sheriff's Office, which includes the Sangamon Jail.

5487-15 TMP/BES

**ANSWER:** **Defendants admit that the Sangamon County Sheriff's Office has a duty to establish and maintain a jail. Defendants deny that Sheriff Wes Barr personally oversees all aspects of the Sangamon County Jail. Defendants deny that Wes Barr had any role in providing medical or mental health treatment to inmates in the Sangamon County Jail.**

24.    Defendant Larry Beck Jr. is responsible for oversight of the day-to-day operations of the Sangamon Jail, including but not limited to detainee cell assignment; ensuring adequate medical and mental health services are provided to detainees; supervising medical staff, social workers, and other personnel; and implementing policies and procedures of the Sangamon Jail.

**ANSWER:** **Defendants admit that Larry Beck, Jr. has duties which include overseeing the day-to-day operations of the Sangamon County Jail. Defendants deny that Larry Beck, Jr. personally provides medical and mental health services to inmates at the Sangamon County Jail. Defendants deny that Larry Beck, Jr. directly supervises medical staff or advises medical or mental health staff as to how to treat or provide services to inmates within the jail. Defendants deny that Larry Beck, Jr. provides supervisory direction to social workers or other personnel as it relates to directly providing medical or mental health services to detainees in the Sangamon County Jail. Defendants admit that Larry Beck, Jr. is involved in developing and implementing certain policies and procedures in the Sangamon County Jail.**

5487-15 TMP/BES

25.     Upon information and belief, Barr, Beck, and/or Does 1-5 knew about Tiffany's mental illness, her numerous prior attempts to commit suicide, and her need for mental health treatment and constant supervision to protect her from harm.

**ANSWER:     Defendants admit that certain individuals working within the Sangamon County Jail had information suggesting that Tiffany Rusher suffered from a mental illness including, but not limited to, prior attempts to commit suicide.  Defendants admit that certain individuals were aware of her need for mental health treatment and that she required provisions to protect herself and others from harm from her while incarcerated in the Sangamon County Jail. Defendants deny that Defendants Barr and Beck were personally aware of all information regarding Tiffany Rusher's prior attempts to commit suicide as well as all of her mental health and medical health treatment needs.**

26.     Despite their actual knowledge of Tiffany's need for intense mental health treatment, defendants Barr, Beck, and/or Does 1-5 failed to arrange for meaningful treatment for Tiffany. Instead, Defendants Barr, Beck, and/or Does 1-5 arranged for Tiffany to be placed in solitary confinement, depriving her of all meaningful social contact with other people.

**ANSWER:     Defendants admit that Tiffany Rusher was placed in a cell by herself at certain times relevant to her confinement in the Sangamon County Jail for her safety as well as the safety of others.  Defendants deny the remaining allegations of paragraph 26.**

5487-15 TMP/BES

27.     While in solitary confinement, Tiffany was deprived of all property. She was stripped naked, barred from having any undergarments or other clothing, but for an anti-suicide blanket. She was not permitted a television or radio, books, magazines, paper, pen or pencil, or anything else she could possibly have used to pass her time in jail while awaiting trial. The only thing she was permitted was a suicide blanket.

**ANSWER:     Defendants deny the allegations of paragraph 27.**

28.     Tiffany remained naked and alone in solitary confinement from December 2016 through March 18, 2017.

**ANSWER:     Defendants deny the allegations of paragraph 28.**

29.     Depriving anyone of meaningful social contact for longer than a few days is harmful to their mental health and is considered to be torture under internationally recognized standards.

**ANSWER:     Defendants deny the allegations of paragraph 29.**

30.     Depriving a person who suffers from severe mental illness of meaningful social contact for lengthy periods of time is toxic to their mental health.

**ANSWER:     Defendants deny the allegations of paragraph 30.**

31.     Depriving a person who is actively suicidal of all meaningful social contact for an extended period of time is not a method of treatment recognized by any competent medical authority. It is certain to make the person worse, not better, increasing their risk of suicide.

**ANSWER:     Defendants deny the allegations of paragraph 31.**

32.     Upon information and belief, Tiffany was not under observation, as required by all recognized suicide prevention protocols. Rather, upon information and belief defendants Barr,

5487-15 TMP/BES

Beck, and/or Does 1-5 had either ordered or approved covering the observation window in Tiffany's cell so that her actions inside the cell could not be observed by staff.

**ANSWER:     Defendants deny the allegations of paragraph 32.**

33.     At the same time Defendants Barr, Beck, and/or Does 1-5 compounded the risk that Tiffany would harm herself by failing adequately to prevent Tiffany from accessing a number of items that she used to harm herself.

**ANSWER:     Defendants deny the allegations of paragraph 33.**

34.     As a direct result of the actions and failures to act of defendants Barr, Beck, and/or Does 1-5, Tiffany further decompensated in her cell and engaged in open and obvious self-harming and suicidal behavior consistent with her diagnosis upon entering the Sangamon Jail. For example:

(i)     On January 12, 2017, Tiffany swallowed a plastic spoon and was transferred from the Sangamon Jail to Memorial Medical Center in Springfield, Illinois, for treatment.

(ii)    On January 19, 2017, Tiffany tried to strangle herself with a strap from a protective medical boot worn on an injured foot.

(iii)   On January 29, 2017, Tiffany swallowed a toothbrush and was transferred from the Sangamon Jail to Memorial Medical Center in Springfield, Illinois, for treatment.

(iv)    On February 3, 2017, Tiffany tried to swallow a whole apple core.

(v)     On February 12, 2017, Tiffany swallowed mattress stuffing.

(vi)    On February 24, 2017, Tiffany put toilet paper up her nose and said she could not breathe.

5487-15 TMP/BES

(vii)    On March 15, 2017, Tiffany swallowed a plastic bag.

**ANSWER:    Defendants deny that Plaintiff's actions described in paragraph 34 were the direct result of any action or failure to act by Defendants. Defendants admit that Tiffany Rusher appears to have engaged in most if not all of the behaviors described. Defendants deny that these behaviors were associated with or the direct result of interaction with Jail personnel. Tiffany Rusher had been engaged in similar behaviors when not incarcerated which appears to have been the basis for her confinement at the McFarland Mental Health Center.**

35.    As a further direct result of the actions and failures to act of Defendants Barr, Beck, and/or Does 1-5, on March 18, 2017, Tiffany was deprived of oxygen to her brain for a lengthy period of time sufficient to cause irreparable damage to her brain. An autopsy later conducted by the Sangamon County Coroner noted that Tiffany "was found unresponsive in her cell, with a strip of hand towel wrapped tightly around her neck."

**ANSWER:    Defendants admit that Tiffany Rusher died in March of 2017 while in the Sangamon County Jail as a result of placing what appeared to be a strip of hand towel around her neck. Defendants deny the remaining allegations of paragraph 35.**

36.    On March 18, 2017, Tiffany was transferred from Sangamon Jail to St. John's Hospital in Springfield, Illinois and was placed on life support.

**ANSWER:    Defendants admit the allegations of paragraph 36.**

5487-15 TMP/BES

37.    On March 30, 2017, Tiffany died as a result of the injuries she had sustained while in Defendants' custody. An autopsy conducted by the Sangamon County Coroner concluded that Tiffany's death was caused by self-inflicted and deliberate ligature strangulation.

**ANSWER:    Defendants admit the allegations of paragraph 37.**

### Count I: Fourteenth Amendment
### Against: Barr (official capacity)

38.    Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER:    Defendants assert each response to the paragraphs of this complaint as incorporated and fully restated herein.**

39.    Tiffany was confined under conditions that posed a substantial risk of serious harm to her health and safety, in that she was held in isolation, deprived of all meaningful social contact, deprived of all personal property, and left naked in a bare cell but for a suicide blanket for over three months.

**ANSWER:    Defendants deny the allegations of paragraph 39.**

40.    Defendant Barr was deliberately indifferent to Tiffany's health and safety.

**ANSWER:    Defendants deny the allegations of paragraph 40.**

41.    Defendants Barr failed to establish a system for providing necessary mental health care to severely mentally ill detainees like Tiffany.

**ANSWER:    Defendants deny the allegations of paragraph 41.**

42.    Defendants Barr failed to establish a system for providing humane, non-damaging detention to severely mentally ill detainees like Tiffany.

**ANSWER:    Defendants deny the allegations of paragraph 42.**

43.    Defendant Barr failed to establish policies and procedures sufficient to protect severely suicidal detainees like Tiffany from self-harm.

5487-15 TMP/BES

> **ANSWER:** **Defendants deny the allegations of paragraph 43.**

44.    Defendant Barr failed to establish policies and procedures to ensure that suicidal detainees like Tiffany were properly observed and kept safe.

> **ANSWER:** **Defendants deny the allegations of paragraph 44.**

45.    Defendant Barr failed to establish policies and procedures to ensure the safety of detainees like Tiffany.

> **ANSWER:** **Defendants deny the allegations of paragraph 45.**

46.    Defendant Barr's actions and inactions caused harm to Tiffany, including severe emotional distress during the time she was confined to the jail, and ultimately her death.

> **ANSWER:** **Defendants deny the allegations of paragraph 46. Defendants deny that Tiffany Rusher's alleged injuries were the result of any unconstitutional policies or procedures. Defendants deny that Plaintiff's allegations sufficiently state a claim against Defendant Barr in his official capacity. Defendants deny that Plaintiff was injured as a result of any alleged constitutional violation. Defendants deny that Plaintiff is entitled to seek punitive damages against a governmental agency.**

## DEFENDANTS DEMAND TRIAL BY JURY

## AFFIRMATIVE DEFENSES

1.    Defendant Barr is entitled to qualified immunity.

## COUNT II: Fourteenth Amendment
### Against: Barr (individual capacity), Beck (individual capacity) and Does 1-5

47.    Each paragraph of this complaint is incorporated as if fully restated here.

5487-15 TMP/BES

**ANSWER:  Defendants assert each response to the paragraphs of this complaint as incorporated and fully restated herein.**

48.  Tiffany suffered from multiple, severe mental illnesses and had an extensive history of engaging in self-harming and suicidal behaviors, which included repeated attempts to hang herself and swallow inedible objects.

**ANSWER:  Defendants admit that Tiffany Rusher suffered from the conditions set forth in her medical and mental health records at certain times relevant to this suit.  Defendants deny that Tiffany Rusher suffered from any conditions not actively in her records during the relevant time frame.  Defendants admit that Tiffany Rusher had a history of self-harming and documented suicidal behaviors.  Defendants admit that Tiffany Rusher was documented to have swallowed non-food items and that she made attempts to strangulate herself.  Defendants deny that all such behaviors were an effort to commit suicide. Defendants deny that they had personal knowledge of all such behaviors identified in her records.**

49.  Defendants knew about Tiffany's history of mental illness, prior suicide attempts, and self-harming tendencies at Logan Correctional Center and at McFarland.

**ANSWER:  Defendants deny the allegations of paragraph 49.**

50.  Defendants similarly knew about Tiffany's suicidal behavior and thoughts, self-inflicted injuries, and ongoing mental illness that existed while Tiffany was in Defendants' custody at the Sangamon Jail, such that any and all risk of Tiffany committing suicide was known and foreseeable.

5487-15 TMP/BES

**ANSWER:     Defendants deny the allegations of paragraph 50.**

51.     Defendants were deliberately indifferent to Tiffany's medical needs and her risk of suicide by failing to provide Tiffany with adequate medical treatment and failing to take appropriate precautions to protect Tiffany from self-harm.

**ANSWER:     Defendants deny the allegations of paragraph 51.**

52.     Defendants' failure to provide adequate medical treatment, including but not limited to a lack of constant supervision and insufficient mental health care, constituted a clear disregard of the risk to Tiffany's life.

**ANSWER:     Defendants deny the allegations of paragraph 52.**

53.     Defendants' placement of Tiffany in solitary was also harmful in and of itself, in that it caused her to suffer severe mental anguish during her detention at Sangamon Jail.

**ANSWER:     Defendants deny the allegations of paragraph 53.**

54.     Defendants' deliberate indifference to Tiffany's medical needs and her risk of suicide violated Tiffany's rights as secured by the Fourteenth Amendment. As a direct and proximate result of Defendants' deliberate indifference, Tiffany suffered mental anguish while she was detained at the Sangamon Jail, and she asphyxiated herself with a towel on March 18, 2017, and died on March 30, 2017.

**ANSWER:     Defendants deny the allegations of paragraph 54.**

## <u>DEFENDANTS DEMAND TRIAL BY JURY</u>

## <u>AFFIRMATIVE DEFENSES</u>

1.     Defendants are entitled to qualified immunity.

### COUNT III: Americans with Disabilities Act
### Against: Barr (official capacity)

55.     Each paragraph of this complaint is incorporated as if fully restated here.

5487-15 TMP/BES

**ANSWER:** **Defendants assert each response to the paragraphs of this complaint as incorporated and fully restated herein.**

56.    Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

**ANSWER:** **Defendants deny the allegations of paragraph 56.**

57.    To prevent discrimination, 28 C.F.R. § 35.130(b)(7) requires a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity."

**ANSWER:** **Defendants deny the allegations of paragraph 57.**

58.    The Sangamon County Sheriff's Office is a public entity as defined in 42 U.S.C. § 12131(1).

**ANSWER:** **Defendants deny the allegations of paragraph 58.**

59.    At all times relevant to this Complaint, in light of her severe mental illness, Tiffany was a qualified individual with a disability within the meaning of Title II of the ADA, 42 U.S.C. § 12131(2), and had a right not to be subjected to discrimination on the basis of her disability by Defendant.

**ANSWER:** **Defendants deny the allegations of paragraph 59.**

5487-15 TMP/BES

60.    Due to her mental illnesses, Tiffany frequently contemplated and engaged in suicidal behavior and could not take adequate care of herself.

**ANSWER:    Defendants deny the allegations of paragraph 60.**

61.    As a detainee at the Sangamon Jail, Tiffany was wholly dependent upon Sheriff Barr for basic daily needs and appropriate accommodations, including mental health care and accommodation. Individuals in the custody of defendant are also dependent on the defendant for all of their basic daily needs, including food, exercise, and safety.

**ANSWER:    Defendants deny the allegations of paragraph 61.**

62.    Under the Title II of the ADA and 28 C.F.R. § 35.130(a), Sheriff Barr is responsible for ensuring that individuals in his custody with known disabilities are provided with reasonable accommodations to prevent discrimination on the basis of disability and are not, on the basis of disability, excluded from participation in or denied the benefits of services, programs, or activities because of their disability.

**ANSWER:    Defendants deny the allegations of paragraph 62.**

63.    Despite Tiffany's known and obvious disability Sheriff Barr failed to reasonably accommodate Tiffany's disability by failing to provide her with reasonably suicide-proof and humane conditions of confinement.

**ANSWER:    Defendants deny the allegations of paragraph 63.**

64.    The failure of the Sheriff's Office to provide adequate mental health treatment to Tiffany failed to accommodate Tiffany's disability.

**ANSWER:    Defendants deny the allegations of paragraph 64.**

65.    The isolation of Tiffany without any meaningful social contact and without any personal property constituted discrimination against Tiffany as a result of her disability.

5487-15 TMP/BES

**ANSWER:    Defendants deny the allegations of paragraph 65.**

66.    As a result of the wrongful conduct of the Sheriff's Office, Tiffany's mental health condition was greatly exacerbated, and she was subjected to unnecessary pain and suffering, and she died.

**ANSWER:    Defendants deny the allegations of paragraph 66.**

## DEFENDANTS DEMAND TRIAL BY JURY

## AFFIRMATIVE DEFENSES

1.    Defendants are entitled to qualified immunity.

### COUNT IV: Rehabilitation Act
### Against: Barr (official capacity)

67.    Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER:    Defendants assert each response to the paragraphs of this complaint as incorporated and fully restated herein.**

68.    The purpose of the Rehabilitation Act is to ensure that no "qualified individual with a disability in the United States . . . shall, solely by reason of [ ] disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

**ANSWER:    Defendants deny the allegations of paragraph 68.**

69.    Tiffany was, at all times relevant to this complaint, a qualified individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(2), and has a right not to be subjected to discrimination on the basis of her disability. 29 U.S.C. § 794(a).

**ANSWER:    Defendants deny the allegations of paragraph 69.**

70.    The Sangamon County Sheriff's Office receives Federal financial assistance within the meaning of 29 U.S.C. § 794(a).

5487-15 TMP/BES

**ANSWER:**    **Defendants deny the allegations of paragraph 70.**

71.    The Sheriff's Office constitutes "program[s] or activit[ies]" within the meaning of 29 U.S.C. § 794(b)(1)(A)-(B) and/or (b)(2)(B) and was required to comply with the Rehabilitation Act.

**ANSWER:**    **Defendants deny the allegations of paragraph 71.**

72.    The failure of the Sheriff's Office to provide adequate mental health treatment to Tiffany failed to accommodate Tiffany's disability.

**ANSWER:**    **Defendants deny the allegations of paragraph 72.**

73.    The isolation of Tiffany without any meaningful social contact and without any personal property constituted discrimination against Tiffany as a result of her disability.

**ANSWER:**    **Defendants deny the allegations of paragraph 73.**

74.    As a result of the wrongful conduct of the Sheriff's Office, Tiffany's mental health condition was greatly exacerbated, and she was subjected to unnecessary pain, suffering, and death.

**ANSWER:**    **Defendants deny the allegations of paragraph 74.**

<u>**DEFENDANTS DEMAND TRIAL BY JURY**</u>

<u>**AFFIRMATIVE DEFENSES**</u>

1.    Defendants are entitled to qualified immunity.

**COUNT V: Wrongful Death (740 ILCS 180)**
**Against: All defendants**

75.    Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER:**    **Defendants assert each response to the paragraphs of this complaint as incorporated and fully restated herein.**

76.    Defendants had a duty to protect Tiffany from harm when such harm was reasonably foreseeable.

**ANSWER:    Defendants deny the allegations of paragraph 76.**

77.    Defendants breached that duty.

**ANSWER:    Defendants deny the allegations of paragraph 77.**

78.    As a result of defendants' breach of that duty, Tiffany died.

**ANSWER:    Defendants deny the allegations of paragraph 78.**

79.    Tiffany's next of kin have suffered damages from the loss of Tiffany, including grief, sorrow, mental suffering, and loss of society.

**ANSWER:    Defendants deny the allegations of paragraph 79.**

## DEFENDANTS DEMAND TRIAL BY JURY

## AFFIRMATIVE DEFENSES

1.    Defendants are entitled to qualified immunity.

2.    To the extent any state law claim is based upon an act or omission occurring more than one year before the filing of this action, said claims are barred by the statute of limitations. 745 ILCS 10/8-101(a).

3.    Defendants are entitled to tort immunity under 745 ILCS 10/4-105 which provides that:

> Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care. Nothing in this Section requires the periodic inspection of prisoners.

5487-15 TMP/BES

4.      Defendants are entitled to tort immunity under 745 ILCS 10/4-103.

5.      Defendants are entitled to tort immunity under 745 ILCS 10/2 which prohibits punitive damages.

6.      Defendants are entitled to tort immunity under 745 ILCS 10/2-202 as it relates to any claim sounding in negligence.

7.      Defendants are entitled to tort immunity under 745 ILCS 10/2-109 for any claim against the governmental entity based upon an act or omission of its employee where the employee is not liable.

8.      Defendants are entitled to tort immunity under any applicable provision relating to Plaintiff's state law claims.

### COUNT VI: Survival Act and Funeral Expenses
### Against: All defendants

80.     Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER:     Defendants assert each response to the paragraphs of this complaint as incorporated and fully restated herein.**

81.     Count VI is alleged against Defendants in their individual capacities and brought by Plaintiff as Tiffany's personal representative in her capacity as administrator of Tiffany's estate.

**ANSWER:     Defendants deny the allegations of paragraph 81.**

82.     This count is brought pursuant to the Survival Act, 755 ILCS 5/27-6, for the medical, funeral and burial expenses and the pain and suffering experienced by Tiffany prior to her death.

**ANSWER:     Defendants deny the allegations of paragraph 82.**

5487-15 TMP/BES

83.     As a result of one or more of the willful and wonton acts or omissions described in the previous paragraphs, Tiffany experienced suicidal thoughts, decline in mental health, agitation, mental abuse, punishment, pain and suffering, and other injuries including medical expenses prior to her death.

**ANSWER:     Defendants deny the allegations of paragraph 83.**

84.     As a direct and proximate result of the death of Tiffany, the estate incurred funeral and burial expenses.

**ANSWER:     Defendants deny the allegations of paragraph 84.**

## DEFENDANTS DEMAND TRIAL BY JURY

## AFFIRMATIVE DEFENSES

1.     Defendants are entitled to qualified immunity.

2.     To the extent any state law claim is based upon an act or omission occurring more than one year before the filing of this action, said claims are barred by the statute of limitations. 745 ILCS 10/8-101(a).

3.     Defendants are entitled to tort immunity under 745 ILCS 10/4-105 which provides that:

> Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care.  Nothing in this Section requires the periodic inspection of prisoners.

4.     Defendants are entitled to tort immunity under 745 ILCS 10/4-103.

5487-15 TMP/BES

5.      Defendants are entitled to tort immunity under 745 ILCS 10/2 which prohibits punitive damages.

6.      Defendants are entitled to tort immunity under 745 ILCS 10/2-202 as it relates to any claim sounding in negligence.

7.      Defendants are entitled to tort immunity under 745 ILCS 10/2-109 for any claim against the governmental entity based upon an act or omission of its employee where the employee is not liable.

8.      Defendants are entitled to tort immunity under any applicable provision relating to Plaintiff's state law claims.

**COUNT VII: Respondeat Superior**
**Against: Barr**

85.      Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER:   Defendants assert each response to the paragraphs of this complaint as incorporated and fully restated herein.**

86.      Sheriff Wes Barr employed various Sangamon Jail personnel and staff who provided inadequate care to Tiffany and/or insufficiently monitored Tiffany while working in the course and scope of their employment.

**ANSWER:   Defendants deny the allegations of paragraph 86.**

87.      Sheriff Wes Barr, by and through his employees, is liable for all Defendants' aforementioned unlawful acts that were the direct and proximate cause of Tiffany's injuries, and her death on March 30, 2017.

**ANSWER:   Defendants deny the allegations of paragraph 87.**

**<u>DEFENDANTS DEMAND TRIAL BY JURY</u>**

5487-15 TMP/BES

## **AFFIRMATIVE DEFENSES**

1.      Defendants are entitled to qualified immunity.

2.      To the extent any state law claim is based upon an act or omission occurring more than one year before the filing of this action, said claims are barred by the statute of limitations. 745 ILCS 10/8-101(a).

3.      Defendants are entitled to tort immunity under 745 ILCS 10/4-105 which provides that:

> Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care.  Nothing in this Section requires the periodic inspection of prisoners.

4.      Defendants are entitled to tort immunity under 745 ILCS 10/4-103.

5.      Defendants are entitled to tort immunity under 745 ILCS 10/2 which prohibits punitive damages.

6.      Defendants are entitled to tort immunity under 745 ILCS 10/2-202 as it relates to any claim sounding in negligence.

7.      Defendants are entitled to tort immunity under 745 ILCS 10/2-109 for any claim against the governmental entity based upon an act or omission of its employee where the employee is not liable.

8.      Defendants are entitled to tort immunity under any applicable provision relating to Plaintiff's state law claims.

5487-15 TMP/BES

## COUNT VIII: Indemnification
### Against: Sangamon County

88.     Each paragraph of this complaint is incorporated as if fully restated here.

**ANSWER:     Defendants assert each response to the paragraphs of this complaint as incorporated and fully restated herein.**

89.     Illinois law provides that public entities are directed to pay any tort judgments for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:     Defendants deny the allegations of paragraph 89.**

90.     Defendants Barr, Beck, and Does 1-5 were employees and agents of Defendants Sangamon County and/or the Office of the Sheriff of Sangamon County and acting within the scope of their employment in committing the misconduct described herein.

**ANSWER:     Defendants deny the allegations of paragraph 90.**

91.     Sangamon County is obligated by Illinois law to pay any judgment relating to the operation of the Sangamon Jail entered against the Sangamon County Sheriff's Office, Barr, Beck, and Does 1-5.

**ANSWER:     Defendants deny the allegations of paragraph 91.**

**Defendants acknowledge the Plaintiff may identify Sangamon County as a *Carver* defendant pursuant to *Carver v. LaSalle County*, 324 F.3d 947 (2003) citing *Carver v. LaSalle County*, 203 Ill.2d 497 (2003).  Pursuant to this law, Sangamon County is a party for indemnification purposes only and is not a party for any other purpose.  Defendants acknowledge that Sangamon County would be obligated under the law to pay judgments against the undersigned Defendants herein.**

5487-15 TMP/BES

### RELIEF REQUESTED

Defendants deny that Plaintiff has suffered any damages as a result of any act or omission on the part of the Defendants.

### DEFENDANTS DEMAND TRIAL BY JURY

Respectfully Submitted,

WES BARR, LARRY BECK and
SANGAMON COUNTY, ILLINOIS,
Defendants

s/ Theresa M. Powell
Theresa M. Powell, IL ARDC #: 6230402
Brett E. Siegel, IL ARDC #: 6310176

HEYL, ROYSTER, VOELKER & ALLEN, P.C.
3731 Wabash Avenue
Springfield, IL 62711-6261
Phone: 217.522.8822, Ext. 2222/2221
Fax:    217.523.3902
Email: tpowell@heylroyster.com
        bsiegel@heylroyster.com

5487-15 TMP/BES

## **PROOF OF SERVICE**

I hereby certify that on May 18, 2018, I electronically filed the foregoing instrument, ANSWER TO PLAINTIFF'S COMPLAINT, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Alexis G. Chardon                                                          Attorneys for Plaintiff
Stephen H. Weil
WEIL & CHARDON LLC
333 South Wabash Avenue
Suite 2700
Chicago, IL  60604
Email: ali@weilchardon.com
Email: steve@weilchardon.com

-and-

Nicole Rae Schult
Alan Mills
UPTOWN PEOPLE'S LAW CENTER
4413 North Sheridan
Chicago, IL  60640
Email: nicole@uplcchicago.org
Email: alan@uplcchicago.org

and I hereby certify that I have mailed on May 18, 2018, by United States Postal Service the foregoing instrument, ANSWER TO PLAINTIFF'S COMPLAINT, to the following non-CM/ECF participants:

None

s/ Theresa M. Powell
Theresa M. Powell

TMP/cs (5487-15)
34113544_1