IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| KELLI ANDREWS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 1:18-cv-1100-SEM-TSH |
| v. | ) |
| | ) |
| SANGAMON COUNTY et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF HER
<u>MOTION TO COMPEL DISCOVERY</u>**

In opposing Plaintiff's Motion to Compel (ECF 26), the Defendants needed to do one of two things: they had to identify a privilege that justifies their redactions to the documents at issue; or, if they were unable to identify such a privilege, they had to show that Rule 34 nevertheless permits redaction of information from documents responsive to a request for production, on grounds that the redacted information is "irrelevant" to the request.

The Defendants' Response (ECF 29) does neither of these things. Instead, the Response largely consists of citations to decisions in which a privilege was found, but with little or no effort to explain why the results in those cases would apply to this one. And indeed, they do not. The Defendants still claim that the privileges they identified during the meet-and-confer process—HIPAA and the IMHDA—justify their redactions, but their Response never actually engages with how these laws work, or addresses the Motion to Compel's straightforward explanation of why neither law justifies the redactions. The Defendants also identify an additional federal evidentiary privilege—the psychotherapist-patient privilege—but again, they do not explain why it would justify the redactions at issue here. As Plaintiff explains herein, that privilege is simply irrelevant to the redactions at issue.

1

Unable to identify an applicable privilege, the Defendants try to justify the redactions on "relevance" grounds, under Rule 34. That argument, though, is at war with the overwhelming weight of authority, which rejects such a position. The Defendants have identified no "unique circumstances," such as disclosure of information that is irrelevant to the case but that would reveal valuable trade secrets, that might justify the redactions on relevance grounds.

As Plaintiff explained in her Motion to Compel, the information that Defendants have redacted is relevant to proving Plaintiff's federal claims: the Defendants' treatment of other mentally ill detainees is relevant to Plaintiff's *Monell* allegations, and identifying who was detained near Tiffany will point Plaintiff to witnesses who can testify both about the Defendants' policies and their treatment of Tiffany. The redacted information, in other words, is important to this case. Defendants have not identified a privilege that permits the redactions they have made. Furthermore, the privacy interests of the other detainees are safeguarded by the Court's Confidentiality Order, which prohibits the use of such confidential information for any purpose outside this litigation, and requires Plaintiff to destroy all such information at the case's conclusion. Production of the un-redacted documents Plaintiff seeks is entirely appropriate.

Herein, Plaintiff briefly reviews the Defendants' arguments.

1. **The Defendants have not identified an applicable privilege.**

    a. **HIPAA**

Under HIPAA, "covered entities" like the Sheriff's Office may not disclose an individual's protected health information ("PHI") except as permitted by HIPAA's enabling regulations. And as Plaintiff explained in her Motion, 45 C.F.R. § 164.512 creates such an exception, for discovery requests made pursuant to a protective order that meets certain criteria—which are satisfied by the Confidentiality Order in this case. (*See* ECF 26 at 3-5.)

2

The Defendants do not dispute that the Confidentiality Order is a qualifying protective order under Section 164.512. Instead they make a variety of other arguments, all of which are wrong. ***First***, the Defendants argue that Section 164.512 is irrelevant "because it only governs protected health information such as medical records, which is not what Plaintiff is requesting." (ECF 29 at 7.) This argument is nonsensical. ***HIPAA*** "only governs protected health information". Plaintiff has assumed that the information Defendants redacted is PHI under HIPAA, but if it is not, then HIPAA does not bar its disclosure in the first place. If that is so, the exception provided by Section 164.512 would indeed be irrelevant, but only because there would be no HIPAA disclosure bar from which an exception is required.

***Second***, Defendants object that when they agreed to the Confidentiality Order, they had not "contemplate[d]" that the Confidentiality Order would permit the disclosure of the PHI of third parties pursuant to Section 164.512. (ECF 29 at 6-7.) As an initial matter, this is incorrect. In August 2018 Plaintiff's counsel, Stephen Weil, discussed the entry of the Confidentiality Order with defense counsel Theresa Powell; in doing so Mr. Weil explained that the order, which is drawn from the model confidentiality order of the Northern District of Illinois, is a qualifying protective order under HIPAA and thus allowed for the discovery of third-party PHI.

Setting that aside, however, this argument is extremely troubling. In essence the Defendants are saying that they would not have agreed to the Confidentiality Order if they had realized it qualified under Section 164.512. What Defendants seem to suggest is that they would have tried to manipulate HIPAA's own regulatory scheme in order to employ HIPAA's disclosure restrictions to frustrate discovery that one of HIPAA's own enabling regulations—Section 164.512—permits. The Defendants cannot be heard to take such a position. In all

events, the terms of the Confidentiality Order make it a "qualifying protective order" under Section 164.512. Under HIPAA, that is enough.

***Third***, the Defendants argue that Section 164.512 does not apply to third parties. (*See* ECF 29 at 7.) They cite no authority for this argument, in HIPAA, Section 614.512, or elsewhere. And indeed it is incorrect. The ***point*** of Section 164.512—which is entitled "Uses and disclosures [of PHI] for which an authorization or opportunity to agree or object is not required"—is to deal with the disclosure of third-party PHI, since ***parties*** to litigation already know about and can object to discovery seeking such disclosures. Indeed, both *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004) and *Ligas v. Maram*, No. 05-cv-4331, 2007 WL 2316940 (N.D. Ill. Aug. 10, 2007) deal with and endorse disclosure of third-party PHI pursuant to Section 164.512. *See also Williams v. Blagojevich*, No. 05-cv-4673, 2008 WL 68680, at *2 (N.D. Ill. Jan. 2, 2008) (citing *Northwestern* and *Ligas* to permit subpoenas for mental health records of numerous mental institution residents—"whether the . . . resident is a class member or not"—because discovery in the case was governed by a qualifying protective order under Section 164.512, which " allow[s] disclosure[] of the medical records for litigation purposes without requiring the specific consent of the individual patient.").

***Fourth*** and finally, Defendants claim that even if the Confidentiality Order qualifies under Section 164.512, HIPAA still requires notification. (ECF 29 at 5, 9-10.) For this position they rely on *Sowell v. Dominguez*, No. 2:09-CV-0047, 2013 WL 5913806, at *8 (N.D. Ind. Oct. 30, 2013), which in turn relied on 42 C.F.R. § 2.64(b) and *United States ex rel. Chandler v. Cook County*, 277 F.3d 969, 974 (7th Cir. 2002). *See Sowell*, 2013 WL 5913806, at *8.

This argument repeats an unfortunate error in the latter part of the *Sowell* decision: it confuses 42 C.F.R. § 2.64(b) with HIPAA. In fact (as *Chandler* explains), 42 C.F.R. § 2.64 is

4

promulgated not pursuant to HIPAA, but rather the Public Health Service Act ("PHSA"), 42 U.S.C. § 201 *et seq*. *See Chandler*, 277 F.3d at 981 & KeyCite 8. *See also Bohannon v. J.M. Baker, D.O.*, No. 06-cv-1033, 2006 WL 2927521, at *2 (D. Kan. Oct. 12, 2006) (noting that "the regulations found in 42 C.F.R. part 2 . . . are not HIPAA regulations"); *Ireland v. Anderson*, No. 3:13-CV-3, 2015 WL 12843761, at *3 (D.N.D. Dec. 15, 2015) (distinguishing between HIPAA Section 512.164 and PHSA regulations applying to substance abuse treatment records, including Section 2.64); *United States v. CRC Health Corp.*, No. 13-cv-117, 2014 WL 12638507, at *4 (W.D. Tex. Oct. 27, 2014) (same); *Cherry v. United States*, No. CV-15-00236, 2016 WL 4539953, at *2-3 (D. Ariz. Aug. 31, 2016) (same).

Section 290dd–2 of the PHSA, which Section 2.64 was enacted to enforce, concerns records of a "program or activity relating to substance abuse education," 42 U.S.C. § 290dd-2(a), and applies only to disclosures that would "identify a patient as having or having had a substance use disorder" and as a person who participated in such a program or activity. 42 C.F.R. § 2.12(a)(1)(i). The requirements of Section 2.64 thus do not apply here. *Sowell* erroneously confused 42 C.F.R. § 2.64 with HIPAA (*see Sowell*, 2013 WL 5913806 at *8 (quoting Section § 2.64 as a "HIPAA require[ment]"). The Defendants' reliance on that portion of *Sowell* is understandable, but the Court should not repeat the mistake. The records that Defendants have redacted are not substance abuse treatment records, and thus they are not governed by the PHSA or Section § 2.64.

### b. IMHDA

In addition to HIPAA, the Defendants claim that the Illinois Mental Health and Disabilities Act, 740 ILCS 110/1 *et seq*. ("IMHDA") prohibits them from producing un-redacted records. (ECF 29 at 3, 6-7.) That is wrong too. As Plaintiff explained in her Motion, because

5

this is a federal case involving federal claims, Federal Rule of Evidence 501, not state-law privileges such as the IMHDA, governs discovery. (*See* ECF 26 at 5-6.) Indeed that is the holding of *Northwestern* and *Ligas*, as Plaintiff explained. (*See id.* (discussing *Northwestern* and *Ligas*). Other cases have held the same. *See Williams*, 2008 WL 68680, at *2 (citing *Northwestern* and *Ligas* to hold that the "[c]onsent requirements of the [IMHDA] are inapplicable to discovery in this case which is based on federal question jurisdiction.").[1]

Confronted with Rule 501, the Defendants deflect by delving into the facts of *Northwestern* and *Ligas*, both of which ultimately barred or limited discovery of medical records. (*See* ECF 29 at 8-9, 10.) The problem with this line of argument is that the Defendants make no effort to explain why the factual issues in those two cases are applicable to this one. And both cases are distinguishable.

In *Northwestern*, the court ultimately barred discovery on a straightforward undue-burden analysis under Rule 45, because the responding party had explained "at length its reasons for believing that the records" at issue "would have little or no probative value," while the requesting party's justifications for seeking the records "remained vague to the point of being evasive." 362 F.3d at 927. In this case, by contrast, Plaintiff has explained that she seeks the records in question in order to identify unbiased witnesses to Tiffany's treatment, and to prove up her *Monell* claims by gathering evidence about the treatment of other detainees. (*See* ECF 26

---

[1] The Defendants also cite *Treadwell v. St. Joseph High School*, No. 98-cv-4906, 1999 WL 753929 (N.D. Ill. Sept. 15, 1999) for the proposition that the IMHDA nevertheless bars mental health record disclosures. (*See* ECF 29 at 5-6.) *Treadwell*, however, was decided years before *Northwestern*. The *Treadwell* decision did not consider whether the IMHDA applied to federal-question cases in light of Rule 501. In light of *Northwestern*, there is no reason to think that it would. As *Ligas* and *Williams* both make clear, given the Seventh Circuit's decision in *Northwestern*, the IMHDA's provisions do not govern discovery in federal question cases, in federal court.

at 2.) In other words, Plaintiff has shown that applying the IMHDA here ***would*** frustrate the enforcement of the federal substantive law, since it would prevent her from gathering evidence relevant for proving up her federal claims.

*Ligas*, meanwhile, did not limit discovery because of the IMHDA. To the contrary, the court was explicit that such state-law privileges did not apply. *Ligas*, 2007 WL 2316940, at \*\*6-7. Rather, *Ligas* limited discovery out of concern that the discovery requests at issue encompassed documents covered by the federal psychotherapist-patient privilege. *Id.* at \*8. As Plaintiff explains in the following section, that privilege is not a concern here.

### c. Psychotherapist-patient privilege

The Response correctly notes that there exists a federal psychotherapist-patient privilege, which, unlike the IMHDA, does govern federal-question cases like this one. (*See* ECF 29 at 3-5.) The Defendants fail to explain, however, why this privilege would apply here. The privilege "protect[s] confidential communications between a psychotherapist and her patient" made "in the course of diagnosis or treatment." *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996). The privilege is a narrow and specific one; as one court observed, "[i]n its discussion of the contours of the psychotherapist-patient privilege, [*Jaffe*] only contemplated information gleaned during actual psychotherapy sessions conducted, obviously, by a licensed therapist." *United States v. Ghane*, 673 F.3d 771, 782 (8th Cir. 2012). Because confidentiality is the animating concern of the privilege, it does not apply to prison intake assessments, *see United States v. Loughner*, 782 F. Supp. 2d 829, 832 (D. Ariz. 2011), or to any other "psychological reports [that are] prepared for a court or prison officials to review, read, and use," since there is no expectation of privacy over such information. *United States v. Deleon*, 323 F. Supp. 3d 1273, 1285 n.6 (D.N.M. 2018).

7

The documents that the Defendants have redacted are cell-assignment records in the jail's isolation unit (*See* ECF 26-2) and related documents. Such records were obviously created for guards and other prison officials to use in administering the jail. They bear no resemblance to confidential therapy session notes that the psychotherapist-patient privilege covers. The privilege simply is irrelevant to the redactions in question.

## 2. Rule 34 does not allow redacting "irrelevant" information from responsive documents.

Having failed to identify any privilege that justifies the redactions, the Defendants argue that they can nevertheless redact inmate information about other inmates from responsive documents because such information is "irrelevant" to Plaintiff's Rule 34 document requests, which sought documents about Tiffany. As Plaintiff noted in her Motion, however, federal courts flatly forbid that practice. (*See* ECF 26 at 7.)

The Defendants attempt to distinguish the authorities Plaintiff cited as originating in other jurisdictions (ECF 29 at 11), yet the rule against redacting for relevance is remarkable for the weight of its authority across the country. *See, e.g.*, *Medtronic Sofamor Danek, Inc. v. Michelson*, 2002 WL 33003691, at *5 (W.D. Tenn. Jan. 30, 2002) ("Medtronic insists that it can redact 'irrelevant' information from the documents it produces to Michelson in the course of discovery. The Federal Rules of Civil Procedure do not recognize irrelevance as a privilege or an objection that warrants redaction . . . ."); *Stewart v. Credit One Bank, N.A.*, 2017 WL 3453569, at *3 (D. Kan. Aug. 11, 2017) ("If the document itself is relevant, the Court sees no justification for allowing Defendant to redact certain portions it unilaterally deems irrelevant."); *Toyo Tires & Rubber Co., Ltd v. CIA Wheel Grp.*, 2016 WL 6246384, at *2 (C.D. Cal. Feb. 23, 2016) (the producing party "may not redact otherwise responsive documents because those documents contain irrelevant material"); *Bonnell v. Carnival Corp.*, 2014 WL 10979823, at *4 (S.D. Fla.

Jan. 31, 2014) (defendant "cannot unilaterally redact portions of otherwise discoverable, non-privileged documents based on its own belief that portions of the documents are irrelevant to the claims in this case"); *Melchior v. Hilite Int'l, Inc.*, 2013 WL 2238754, at *3 (E.D. Mich. May 21, 2013) (holding a subpoenaed nonparty "cannot unilaterally redact portions of documents based on relevancy grounds"); *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011) ("Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request."); *ArcelorMittal Clev. Inc. v. Jewell Coke Co., L.P.*, 2010 WL 5230862, at *3 (N.D. Ohio Dec. 16, 2010) ("[T]he language of Rule 34 discusses production of 'documents,' rather than paragraphs or sentences. The Court sees no compelling reason [to permit Defendant to redact information it thinks is] not relevant or responsive where that information appears in a document that contains otherwise relevant or responsive information."); *Krausz Indus., Ltd. v. Romac Indus., Inc.*, 2011 WL 13100750, at *3 (W.D. Wash. Aug. 10, 2011) ("[U]nilateral redactions on the basis of irrelevance or non-responsiveness is improper").

The Defendants, by contrast, go on for pages without citing a single authority to support their relevance-redaction argument (*see* ECF 29 at 11-13). The only authority they eventually cite is *In re Takata Airbag Prods. Liab. Litig.*, 2016 WL 1460143 (S.D. Fla. Mar. 1, 2016), where the court did permit redaction of some information. But as other courts have explained, the *Takata* redactions involved "unique circumstances," in which the *Takata* court permitted "redaction of irrelevant information from certain otherwise responsive documents because it contained competitively sensitive information that competitors could use to defendant's detriment." *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, No. 12-cv-00787, 2017 WL 3624262, at *3 (D.N.J. Apr. 26, 2017). And indeed the issue in *Takata* was narrower still:

9

there, "the parties agreed to redact irrelevant information but disagreed on the procedure for doing so." *Id.* (describing *Takata* dispute).

No such circumstances exist here. Plaintiff has not agreed to any of the Defendants' redactions, for the simple reason that the redacted information is relevant to Plaintiff's case. Plaintiff has explained, repeatedly, that the names that Defendants have redacted are relevant to proving Plaintiff's federal claims, both because they will help Plaintiff track how the Defendants confined other detainees in the jail's isolation unit, and because they will help Plaintiff identify unbiased witnesses who can testify both about the Defendants' practices in general and their treatment of Tiffany in particular. On the other hand, the privacy of these detainees is safeguarded by the Court's Confidentiality Order, which would prohibit any party for using the disclosed information for any purpose outside of this litigation, and would require Plaintiff to destroy the information once the litigation has concluded. Those provisions provide ample protection of the other detainees' privacy interests in this case.

*   *   *

For the foregoing reasons the Court should grant Plaintiff's Motion to Compel.

Dated: November 26, 2018                     */s/ Stephen H. Weil*

Stephen H. Weil – steve@weilchardon.com
Alexis G. Chardon – ali@weilchardon.com
Weil & Chardon LLC
333 S. Wabash Ave., Suite 2700
Chicago, IL 60604
312-585-7404

Alan Mills - alan@uplcchicago.org
Elizabeth Mazur - liz@uplcchicago.org
Nicole Schult - Nicole@uplcchicago.org
Uptown People's Law Center
4413 North Sheridan Rd.
Chicago, Illinois 60640
Tel: (773) 769-1411
Fax: (773) 769-2224

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

  I hereby certify that on November 26, 2018, a true and correct copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

                    */s/ Stephen H. Weil*