March 26, 2019

To Whom It May Concern:

I am a licensed clinical social worker practicing in Chicago. I have worked in a variety of practice areas within the field of social work. I received my Masters in Social Work from New York University, where I focused on theories of child and adolescent development, family systems therapies, and best practices for treatment of post-traumatic stress disorder. Within the past six years, I have provided social work services to people with mental illness, including intensive case management, therapeutic support, and crisis interventions. In my current practice, I provide social work support to adults who have suffered trauma and/or been previously incarcerated, and their families.

At your request, I have reviewed the medical and mental health records of Ms. Tiffany Rusher from the Sangamon County Detention Facility, as well as discharge documentation, received by the Sangamon County Detention Facility, from McFarland Mental Health Center. I have also reviewed the complaint in the lawsuit brought on by Ms. Kelli Andrews, Administrator of the Estate of Ms. Rusher, who is now deceased. After my review of the records and factual allegations in this complaint, I conclude that there is reasonable and meritorious basis to file Ms. Andrew's claim against licensed clinical social worker, Mr. Michael Shmikler, to the extent that Mr. Shmikler was responsible for Ms. Rusher's mental health care and treatment while she awaited trial at Sangamon County Detention Facility, and/or was responsible for the failure to provide Ms. Rusher with the level of therapeutic care necessary to protect Ms. Rusher from the significant psychological threat that she posed to herself. While licensed clinical social workers sometimes work on mental health treatment teams with other mental health professionals, like psychiatrists, there is no indication from the records I reviewed that any other mental health professional was involved in Ms. Rusher's care and treatment while she was at the Sangamon County Detention Facility.  For this reason, I assume for the purpose of this letter that Mr.

Shmikler had primary responsibility for Ms. Rusher's mental health care and treatment during her time at the detention center.

In my opinion, given the severity of Ms. Rusher's symptoms and her long history of mental illness, the standard of care required Mr. Shmikler to recognize that Ms. Rusher was in acute need of intensive mental health therapy, report or refer the need for additional therapeutic assistance to superiors or other specialists, work to ensure that she was provided with adequate treatment, and refer Ms. Rusher to a psychiatrist with whom he could collaborate on her care. At the very least, these things were necessary to mitigate the harmful impact of solitary confinement on Ms. Rusher's already compromised mental state and to prevent or reduce her from engaging in self-harm. The records that I have reviewed do not reflect that Mr. Shmikler did any of those things

Based on my review of the records and the allegations made in this complaint, I conclude that this breach of the standard of social work care harmed Ms. Rusher, and ultimately, contributed to her suicide, because Ms. Rusher did not receive the level of therapeutic support needed to treat an adult with diagnoses of serious mental illness, and a well-documented history of suicide attempts and self-harming behaviors. It is my belief that, had Mr. Shmikler provided a level of social work care commensurate with Ms. Rusher's serious and persistent mental health issues, her suicide could have been prevented.

Signed,

