01/09/2020

Alan Mills
Elizabeth Mazur
Uptown People's Law Center
4413 N. Sheridan
Chicago, Illinois 60640

Dear Mr. Mills,

Your office has retained me to review materials and give professional opinions in the case Rusher v. Sangamon County. My hourly rate for consulting in this manner is $175/hour.

**Qualifications**

A copy of my resume is attached to this letter as Attachment A. I received my Master of Social Work Degree in 1990 and I have been a Licensed Clinical Social Worker since 03/29/1993. I am generally familiar with standards of care, methods, and practices observed by LCSWs. I have been practicing as an LCSW since 1993, in a number of contexts, both as an individual and group psychotherapist and as a Clinical Supervisor, responsible for monitoring, approving and supervising the treatment plans of clients, as well as the clinical care provided by other therapists. I have worked with many clients and their families, including those with serious mental illnesses, and had for many years worked facilitating referrals and involuntary admissions to State and private psychiatric hospitals as part of my duties both as a provider of care and supervisor of others doing so.

**Materials Reviewed**

You provided me with the following materials:

- Plaintiff's Third Amended Complaint
- Tiffany Rusher's MacFarland discharge materials (labeled Sangamon County Produced 449-462)
- Michael Shmikler's notes regarding Tiffany Rusher dated 12/16/16, 1/2/17, 1/27/17, 2/6/17, 2/20/17, and 3/17/17 (labeled Sangamon County Produced 885-889, SCJ Medical Records Tiffany Rusher 33)
- Prisoner Location Verification forms (labeled ACH 454-550)
- Defendant's Response to Plaintiff's April 14, 2019 Interrogatory
- Deposition of LCSW Lydia Hicks (including exhibits Hicks 1-4, Ealey 2, and Ealey 4)
- Article 12-004 (labeled Sangamon County Produced 2740-2745)
- Tiffany Rusher Jail Incident Reports (labeled Sangamon County Produced 736-739)
- GAF Scale (labeled ACH 744)
- Mental Health Services – Referral Tracking Forms (ACH 099-A to ACH 099-RR)

**Assumptions**

You asked me to make the following assumptions:

- Michael Shmikler is deceased

EXHIBIT 11

HARRISON 1

- While Tiffany was in Sangamon County Jail (SCJ), Mr. Shmikler was the only mental health professional on-site. He worked 28-hours a week at the jail. There was no psychiatrist on site and Tiffany was never referred to an off-site psychiatrist. Tiffany's mental health medications were prescribed by a nurse practitioner at the jail. Tiffany was referred to a local ER for treatment on a few occasions when she harmed herself physically.
- The MacFarland documents referenced above were at the Sangamon County Jail and were accessible to Mr. Shmikler

Opinions

You asked me to opine on the following subjects:

(1) Based on Mr. Shmikler's 1/2/17 note regarding Tiffany, he was aware that Tiffany was brought to the jail directly from MacFarland Mental Health Center. Based on this information, would you expect Mr. Shmikler to have made himself familiar with the contents of the MacFarland discharge records? If so, why?

It is standard practice for LCSW's to review referral records as soon as possible when they are available. LCSWs know that is important to collect past mental health history about their clients. Information about a recent inpatient psychiatric hospitalization would be especially important for someone in Shmikler's position. In this case in particular, the fact that Ms. Rusher had been continuously hospitalized for months prior to her admission to the jail meant that she was extremely ill, and was being placed in a facility which not provide the same level of treatment that she had received in the hospital. Added to this, the fact that the client in question was admitted to the jail based on an allegation that she had engaged in violent behavior, coupled with her concurrent suicidality, meant it was particularly vital both for the client's safety, as well as that of other inmates and staff that the assigned social worker quickly make an assessment of the level of care she needed, and whether the jail could provide the needed level of care.

(2) What is the difference between mental health assessment and treatment? What types of mental health treatment do LCSW's provide? Did Tiffany Rusher need treatment/therapy while she was in the Sangamon County Jail, and if so, why? Would an LCSW in Mr. Shmikler's position know that Tiffany Rusher needed therapy?

Mental health assessment is a process of ascertaining symptoms, stressors, and history. This assists the LCSW in treatment planning-what the client requires going forward, and what resources are available. Assessment is an ongoing process. Treatment is service aimed at reducing the client's suffering and treating and/or helping the client to manage symptoms. Types of therapy provided by LCSWs include: individual therapy or counseling (the distinction is sometimes thought to be that counseling is helping clients deal with what cannot change, and therapy is helping them to get over things that can), group therapy/counseling, or family therapy. In addition, LCSWs can arrange for treatment by psychiatrists, and other services that would benefit the client (access to other health care, applying for benefits, arranging for housing assistance, and so forth-all of which are often referred to as case management).

It seems clear that Ms. Rusher required some mental health treatment while at the jail-she was violent, hence her transfer there, as well as being chronically suicidal. Suicidality is a severe symptom, as is violence toward others. Mood and affect regulation cannot be controlled by medication alone. LCSWs do treatment planning as above as a matter of course. Mr. Smikler should have known she would

HARRISON 2

benefit from therapy, not just assessment of her confinement requirements. From the records I have been provided, it is clear that Mr. Shmikler failed prepare a treatment plan to determine the level of care she needed, let alone take any steps to implement a coherent plan of treatment.

> (3) Is it important for LCSW's to document treatment? If so, why? If Mr. Shmikler provided therapy to Tiffany Rusher during her time at the jail, what kind of documentation would you expect to see? Do you see any indication in the materials that Mr. Shmikler provided treatment to Tiffany (as opposed to simply assessment)?

Documentation of services provided is critical for several reasons. First, it provides a record for other treating professionals to refer to if the person providing care is not available to talk to or consult with. Second, it "proves" that services were provided. The standard is: "If what you did right isn't in writing, it didn't happen." If Mr. Smikler provided therapy to Ms. Rusher, I would expect at least to see a treatment plan, and then progress notes documenting what he did, his assessment of how she responded, and a tentative plan for going forward, including when the next session or treatment would occur.

> (4) Would a reasonable LCSW in Shmikler's position believe that Tiffany was getting an adequate level of mental health care treatment and monitoring at the jail? Assume that Mr. Shmikler was allowed and expected to make recommendations to Sangamon County Jail and/or ACH administrators relative to Tiffany's mental health treatment, placement, and monitoring-- what recommendations would you expect an LCSW in Shmikler's position to make?

I cannot imagine any LCSW thinking that her confinement and mental health treatment at the jail, such as it was, to be adequate to her needs. The monitoring as it was documented seemed aimed more at the circumstances of her confinement and need for continued intensive monitoring than her mental health needs. If I were in Mr. Shmkiler's position, I would in this case have recommended at least a psychiatric assessment, and likely a transfer to a psychiatric hospital. It would be useful in the first case to get a second, professional opinion (including assessment of her psychiatric medication), and in the second, staff and physical circumstances that were trained in and designed for mental health treatment. Even if Ms. Rusher had been confined in a hospital, it would have reduced her chances of self-harm as well as notably improving her care for symptom relief and safety.

> (5) What is a GAF score? What information do LCSWs rely on in order to determine a GAF score? What, if any, opinions do you have about the GAF scores associated with Tiffany on the Mental Health Services - Referral Tracking forms (ACH099-A to ACH 099-RR)? Do Mr. Shmikler's records provide clinical support for those GAF scores?

GAF is a Global Assessment of Functioning. It was originally part of a multi-axial assessment of functioning, which included diagnosis/diagnoses, stressors, medical conditions which had an effect on symptoms, and GAF. The multi-axial assessment is no longer used. GAF is a method of rating functioning. I cannot imagine at GAF score of 60 in Ms. Rusher's case being correct. A score of 1-20 is more accurate given her circumstances. Mr. Shmikler's records do not give adequate support for a score of 60 which is considered mild difficulty, according to the GAF scale for Operationalization for Correctional Settings.

The opinions expressed in this report are based on my professional education, training, and experience as a Licensed Clinical Social Worker. I hold all of the opinions expressed in this letter to a reasonable degree of professional certainty. I reserve the right to change or supplement my opinions if/when additional information becomes available.

Sincerely,

Todd Harrison, LCSW

HARRISON 4

**Todd Harrison LCSW**
**11 Montclair Road**
**Urbana, IL 61801**
**(773) 251-4570**
toddlcsw@juno.com

Mental Health and Social Work Experience

**12/2014-Present/Insight Therapy/3358 Big Pine Trail, Suite B, Champaign IL 61822-Phone 217 383 0151**

    Psychotherapy, long and short-term, with individuals, couples and families. Areas of concentration include: couple therapy, trauma recovery, addiction recovery, mindfulness-based cognitive treatment

**01/2010-12/2014/Psychotherapist/Kevin Elliott Counseling/44 E. Main, Champaign IL 61820 Phone-217 398 9066**

- Psychotherapy, long and short-term, with individuals, couples and families. Areas of concentration include: couple therapy, trauma recovery, addiction recovery, mindfulness-based cognitive treatment

**01/1993-05/2008/Private psychotherapy practice /Various locations/Chicago Illinois, Self-employed**

- Psychotherapy, long and short-term, with individuals, couples and families

**1993-2009, 2019-present/Clinical Consultant-Assessor/People's Law Center/4413 North Sheridan Road, Chicago Illinois- Phone 773 769 1411**

- Performed psychological assessments and provided written reports for Law Center clients. Clinical consultation with Law Center staff concerning client symptoms for Social Security Disability applications

**Community Counseling Centers of Chicago/4740 N. Clark, Chicago IL 60640 Phone 773-769-0205/Fax 773-765-0801**

**11/2006-12/2008 Site Director/C4Clark**
- Monitored clinical activity and reporting patterns to ensure that projected statistics were achieved.
- Served actively on the Quality Council, reporting directly to and working effectively with the Chief Operating Officer
- Studied, analyzed and reviewed program operations to ascertain effectiveness of services; made recommendations of types of services offered and provided leadership to achieve optimum results with the guidelines and services of the agency.
- Evaluated the services provided to specified goals and standards; adjusted as necessary to accomplish program objectives; and recommended modifications where appropriate.

- Evaluated the services provided re: specified goals and standards; adjusted as necessary to accomplish program objectives; and recommends modifications where appropriate.
- Provided orientation and training to staff.
- Coordinated case finding efforts to ensure an adequate number of referrals
- Responded to community requests for speakers on behavioral health issues.
- Ensured that prescribed lengths of stay and billing practices were congruent with program and billing guidelines
- Completed administrative forms to assure accurate data collection for billing management information systems and other purposes in accord with agency and funder policies and procedures.

**04/1996-11/2006 and 12/2008-05/2009/Clinical and Administrative Supervisor /Adult Outpatient Program**
Clinical and administrative responsibility for six full-time staff. Data management and utilization review. Agency contact for all Managed Care contracts. Interviewed and hired staff. Provided clinical consultation. Half-time psychotherapist with individuals, couples, families and groups. Maintained Illinois Licensure in Clinical Social Work. Active service on the Quality Council.

**10/1990-04/1996/Staff Therapist/Adult Outpatient Program**
Full time psychotherapist-group, marital and individual therapy. Supervised graduate student interns from a variety of university settings. Area of specialization in SSI/SSD and Public Aid entitlement advocacy. Acquired and maintained Licensure in Clinical Social Work. Served on Quality Council for two years.

**Internships**

**Northtown Rogers Park Mental Health Center/Chicago, Illinois 1989-90**
**Chicago Alcoholism Treatment Center/Chicago, Illinois 1988-9**
Psychotherapy/addiction treatment with individuals, families and groups. Specialization in drug/alcohol screenings.

**Education**

Master of Social Work with formal recognition for Academic excellence
Loyola University-Chicago May 1990

Bachelor of Arts with Distinction May 1974
University of Illinois at Urbana-Champaign

**Honors**

Loyola University-Chicago/Graduate Assistant/School of Social Work Honored by Loyola-Chicago School of Social Work for Academic Excellence
Graduation with Distinction from University of Illinois at Urbana-Champaign

Dean's list; academic honor roll-University of Illinois at Urbana-Champaign