IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KELLI ANDREWS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18 C 1100 |
| | ) | |
| v. | ) | Hon. Sue Myerscough, J. |
| | ) | |
| COUNTY OF SANGAMON, *et al.*, | ) | Hon. Tom Schanzle-Haskins, M.J. |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION TO COMPEL

Pursuant to Federal Rule of Civil Procedure 37 and the Court's December 5, 2021 Minute Entry, Plaintiff, through her undersigned counsel, hereby moves the Court for an order directing defendant Advanced Correctional Healthcare, Inc. ("ACH") to produce salary and compensation information for members of Dr. Norman Johnson's family, including but not limited to Dr. Johnson and his daughter, Jessica Young, for the time period covered by the existing punitive damages discovery, *i.e.* 2017 to the present.

In support of her request Plaintiff states:

### DISCUSSION

This motion follows on an oral request made by Plaintiff's counsel during the December 3, 2021 video conference in this case. Plaintiff is attempting to discover the value of ACH as a company, in order to present information on ACH's financial condition to the jury to assist it in measuring an appropriate punitive damages award. ACH is a closely held corporation. As Plaintiff understands it from ACH's punitive damages discovery responses, ACH is owned entirely or almost entirely by Dr. Norman Johnson and his family, including Dr. Johnson's daughter Jessica Young, who also serves as CEO of ACH.

On October 31, 2021, as part of punitive damages discovery, ACH produced several years of tax returns and profit and loss statements. After reviewing those returns and statements, Plaintiff made follow-up requests seeking to understand the nature of various expenditures and revenues that were identified in those returns. ACH answered those questions willingly, clarifying what amounts were spent on in various areas, and for what purposes.

Plaintiff's follow-up discovery requests were targeted in part at identifying the compensation paid to ACH's owners. When none of ACH's follow-up responses identified the information Plaintiff sought, Plaintiff followed up again, and asked ACH's counsel to identify the compensation ACH paid to members of the Johnson family.[1] This time, ACH balked. ACH's counsel asserted that such information cannot be relevant because (a) the Johnson family members are not defendants in this suit, and (b) Plaintiff has not accused ACH of violating the law in making payments to the Johnson family, and thus any payments made to the Johnson family are irrelevant in this case.

These objections misunderstand the purpose of Plaintiff's request. By its own admission, ACH is a closely-held corporation. "In a close corporation the corporation's shares are not listed on a stock exchange or actively dealt in by brokers and, therefore, there is no established market for the corporation's stock." *Olsher v. Olsher*, 397 N.E.2d 488, 494 (Ill. Ct. App. 1979) (citing 1 F. Hodge O'Neal, Close Corporations § 1.07 (1958)). As such, "Illinois courts have recognized that the stock of closely held corporations and professional businesses must be valued with regard for the operation of the business," and that "evidence of the income and assets of [a

---

[1] Plaintiff does not refer here to ACH's distribution of profits to the Johnson family appearing in ACH's tax returns, such as occurs with pass-through of profits to the owners of an S-Corporation, but rather payments to the family made putatively for services rendered to ACH, *i.e.*, payments made putatively as compensation for work done on ACH's behalf.

closely held business] as reflected in its corporate income tax return [is] *insufficient to establish its value as a business entity*." *In re Marriage of Kapusta*, 491 N.E.2d 48, 52 (Ill. Ct. App. 1986) (collecting cases, emphasis added).

Tax returns are insufficient for valuing closely-held corporations in part because valuing the "operation of the business" of a closely held corporation, *cf. Kapusta*, 491 N.E.2d at 52, often turns on two ways in which owners of a close corporation benefit from that ownership: (1) through distribution of corporate earnings, *and* (2) through additional compensation treated as salary. *See Bonavita v. Corbo*, 692 A.2d 119, 124 (N.J. Super. Ct. Ch. Div. 1996) ("[E]mployment is, of course, a frequent and perfectly proper benefit of stockholders in a close corporation."); *id.* at 126 ("[T]he primary benefit that [the defendant close corporation shareholder] receives from the corporation is continued employment for himself and his family."). Specifically, closely held corporations often include the value of "excess earnings." *Cf. Kapusta*, 491 N.E.2d at 52. Excess earnings can be measured by comparing the salary and/or pension of the owner of a closely-held company with the hypothetical salary and compensation that would be earned by a "professional with similar qualifications." *Id.*

Plaintiff seeks information on salaries and related compensation paid to the Johnson family to identify any such "excess earnings," the better to understand ACH's actual value. The purpose of the discovery is to permit the jury to place itself in the position of a disinterested party seeking to understand what ACH is worth—a prudent prospective buyer who is trying to determine how much to pay for the company, for example. Because the value of ACH to a prospective buyer would turn both on its corporate income as well as "excess earnings" that the owners could pay themselves in the form of putative income, both financial figures are relevant to determining ACH's value, even if they are not spelled out in tax returns or profit and loss

statements. If ACH pays its owners more than a similarly situated professional (or if it is paying them less) ACH's corresponding value to a hypothetical prospective buyer—and thus, to the jury—would be more (or less) than appears on the official tax returns and profit and loss statements that ACH has produced to Plaintiff.

In objecting to this discovery ACH seems to contend that no excess earnings will be found. Without production of the responsive information, however, Plaintiff is unable to determine whether or not that is correct. Just like the other business expenses that ACH willingly disclosed upon request (before Plaintiff inquired about what expenses ACH incurred in making payments to the Johnson family), the salaries and related compensation paid to the members of the Johnson family are relevant to the question of ACH's value, and thus to the question of punitive damages. As such, they are appropriately discoverable under Rule 26(b)(1). *See Wise v. Life. Ins. Co. of North America*, No. No. 11-cv-3429, 2012 WL 1203559, at *2 (C.D. Ill. 2012) ("[t]he scope of discovery is broad. A party may obtain discovery regarding any matter, not privileged, which is relevant to . . . any party.").

\* \* \*

This discovery is also timely. In January 2019, Plaintiff requested "[f]inancial statements sufficient to show the total net worth of Advanced Correctional Healthcare and profits and losses for [several years going back to 2017]." *See* ECF 256-3 ¶ 10. That request contemplates the information Plaintiff seeks here. The Court should reject argument by ACH that a more specific request should have been made, because doing so would reward ACH for its dilatory conduct in disclosing its financial information.

As the Court will recall from Plaintiff's motion to compel (ECF 256), while Plaintiff served punitive damages discovery on ACH early in the fact discovery period in January 2019,

ACH requested, and Plaintiff agreed, that ACH could respond to that discovery 30 days after summary judgment had been decided. The Court issued its summary judgment ruling on July 1, 2021, making ACH's punitive damages responses due on July 31. ACH failed to produce anything until *October* 31, however, and only after being ordered to do so by the Court. The delay has prejudiced Plaintiff significantly: whereas Plaintiff normally would have had time to serve iterative discovery requests narrowing down to the specific information she sought, because of ACH's delay Plaintiff has run out of time to issue such narrowing requests, and thus is has no means of performing the refining feature that she would have been able to do had ACH not delayed in its responses.

There was simply no need for this delay: the virtual entirety of ACH's punitive damages production consisted of tax returns and profit and loss statements—documents prepared in the normal course of business that could have been produced months before. Plaintiff should not be punished for ACH's delay and should be allowed seek the discovery described in this motion.

**WHEREFORE**, Plaintiff respectfully requests that the Court order ACH to produce compensation information for the Johnson family as described herein.

Dated: December 10, 2021

Respectfully submitted,

/s/ Stephen H. Weil

Alan Mills - alan@uplcchicago.org
Nicole Schult - nicole@uplcchicago.org
Bridget Geraghty - bridget@uplcchicago.org
Uptown People's Law Center
4413 North Sheridan Rd.
Chicago, Illinois 60640
Tel: (773) 769-1411
Fax: (773) 769-2224

Stephen H. Weil
Arthur Loevy
Sarah Grady
Isabella Aguilar
Loevy & Loevy
311 N. Aberdeen Street
Third Floor
Chicago, IL 60607
312-243-5900
weil@loevy.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I, Steven H. Weil, an attorney, certified that on December 10, 2021 I served a copy of this pleading on all counsel of record by filing the same through the CM/ECF system.

      /s/ Stephen H. Weil