**IN THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION**

KELLI ANDREWS, as Administrator of the Estate )
of Tiffany Rusher, )
                                   )
                 Plaintiff, )
                                     )
                 v. )         Case No. 18-cv-1100-SEM
                                     )
SANGAMON COUNTY, et al., )
                                     )
                 Defendants. )         Hon. Sue E. Myerscough

**<u>PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE</u>**

## TABLE OF CONTENTS

PLAINTIFF'S MOTION *IN LIMINE* NO. 1 ................................................................................1

PLAINTIFF'S MOTION *IN LIMINE* NO. 2 ................................................................................7

PLAINTIFF'S MOTION *IN LIMINE* NO. 3 ..............................................................................11

PLAINTIFF'S MOTION *IN LIMINE* NO. 4 ..............................................................................13

PLAINTIFF'S MOTION *IN LIMINE* NO. 5 ..............................................................................19

PLAINTIFF'S MOTION *IN LIMINE* NO. 6 ..............................................................................23

PLAINTIFF'S MOTION *IN LIMINE* NO. 7 ..............................................................................26

PLAINTIFF'S MOTION *IN LIMINE* NO. 8 ..............................................................................32

PLAINTIFF'S MOTION *IN LIMINE* NO. 9 ..............................................................................35

PLAINTIFF'S MOTION *IN LIMINE* NO. 10 ............................................................................36

PLAINTIFF'S MOTION *IN LIMINE* NO. 11 ............................................................................38

PLAINTIFF'S MOTION *IN LIMINE* NO. 12 ............................................................................40

PLAINTIFF'S MOTION *IN LIMINE* NO. 13 ............................................................................42

PLAINTIFF'S MOTION *IN LIMINE* NO. 14 ............................................................................44

PLAINTIFF'S MOTION *IN LIMINE* NO. 15 ............................................................................45

PLAINTIFF'S MOTION *IN LIMINE* NO. 16 ............................................................................47

PLAINTIFF'S MOTION *IN LIMINE* NO. 17 ............................................................................49

PLAINTIFF'S MOTION *IN LIMINE* NO. 18 ............................................................................51

PLAINTIFF'S MOTION *IN LIMINE* NO. 19 ............................................................................53

PLAINTIFF'S MOTION *IN LIMINE* NO. 20 ............................................................................54

PLAINTIFF'S MOTION *IN LIMINE* NO. 21 ............................................................................56

PLAINTIFF'S MOTION *IN LIMINE* NO. 22 ............................................................................57

PLAINTIFF'S MOTION *IN LIMINE* NO. 23 ............................................................................58

PLAINTIFF'S MOTION *IN LIMINE* NO. 24 ............................................................................59

PLAINTIFF'S MOTION *IN LIMINE* NO. 25 ..........................................................................60

PLAINTIFF'S MOTION *IN LIMINE* NO. 26 ..........................................................................62

**PLAINTIFF'S FIRST MOTION *IN LIMINE* TO BAR EVIDENCE AND ARGUMENT
REGARDING TIFFANY RUSHER'S PRIOR CONDUCT AT MACFARLAND**

In this motion *in limine*, Plaintiff moves the Court to bar the defendants from introducing

witness testimony, records, or related arguments relating to Ms. Rusher's events of self-harm at

McFarland Mental Health Center or Ms. Rusher's physical confrontations with other patients or

staff at McFarland. This Court should bar such evidence of Ms. Rusher's prior acts and prior

bad acts. Such evidence is prohibited from disclosure under Federal Rule of Evidence 404, and

introduction of any such evidence presents a serious risk that the jury will decide the case based

on its evaluation of Ms. Rusher's character, rather than the merits of Plaintiff's claims, and the

evidence thus runs afoul of Rule 403.

## ARGUMENT

The defendants have identified 25 witnesses who were employed at McFarland to testify

about the seven months that Ms. Rusher spent there.[1] Based on the depositions Plaintiff attended

for a number of these witness, Plaintiff anticipates that the defendants primarily intend to elicit

testimony from these witnesses about (1) Ms. Rusher's acts of self-harm at McFarland and (2)

Ms. Rusher's physical confrontations with other McFarland patients or staff. They have also

identified thousands of pages of records from McFarland that they presumably intend to

introduce for these same purposes. *See* Proposed Final Pretrial Order, Def. SC Ex. 1. Such

testimony and documentary evidence is inadmissible in this case for a variety of reasons.

First, the evidence is not admissible because it was acquired only after the events at issue

in the case and is therefore not relevant. After-acquired evidence is routinely excluded in cases

---

[1] Plaintiff understands the following to be the McFarland witnesses: Ajay Jeetwani, Melinda
Oldham, Kimberley Swenka, Breana Foster, Ronda Jacobs, Kelly Tucker, Barbara Eggemeyer, Brenda
Booth, Kathleen Treanor, Crystal Tiskos, Donald Miller, Denise Weitzel, Betty Daugherty, Dr.
Kripakaran, Dr. Link, Kedeka Miller, Lisa Saunders, Greg Donathan, Dr. Fernandez, Karen Olive,
Kimberley Estill, Olumide Adeyemo, Lisa Liss, Dr. Eberhardt, Tracy Spradlin, and Mary Cope.

1

like this one, where the question of liability focuses on whether the conduct of the Defendants was objectively reasonable based on the information available to it at the time. *See, e.g., Sherrod v. Berry*, 856 F.2d 802, 803 ("[T]he reception of evidence of any information beyond that which" was known to the state actor at the time is "improper, irrelevant, and prejudicial"); *see also Palmquist v. Selvik*, 111 F.3d 1332, 1336-40 (7th Cir. 1997) (jury is not permitted to receive information beyond that "which was available to the office at the time"). Just as police officers are not permitted to rely upon after-acquired information to demonstrate that their use of force was objectively reasonable, Defendants here cannot rely on information they did not know to address the question of their own objective reasonableness. *See, e.g., Graham v. Connor*, 490 U.S. 386, 396 (1989) ("[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"); *Deering v. Reich*, 183 F.3d 645, 650 (7th Cir. 1999) ("[r]easonableness depends on the information the officer possesses prior to and at the immediate time of the shooting"); *Graham v. Bennett*, 2007 WL 781763, at *3 (C.D. Ill. Mar. 12, 2007) (barring evidence of "acts engaged in by [p]laintiffs outside of [the officer's] presence" because "any incident which occurred outside the present of [d]efendant and of which he had no knowledge at the time the [force was used] has no relevance to the issue of whether [d]efendant's use of force was reasonable from the perspective of a reasonable officer").

Indeed, the Supreme Court has held that in cases involving Fourteenth Amendment claims brought by pretrial detainees like this one, liability turns on whether the defendant's conduct was objectively reasonable "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *cf. Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir.

2013) (holding that objective reasonableness "must be based on actual knowledge the officers had at the time of the [events at issue], rather than on knowledge acquired after the fact."). That *Kingsley* involves a use-of-force claim by a pretrial detainee is irrelevant, as the Seventh Circuit has found it to apply equally to claims involving conditions of confinement and medical/mental health care. *Miranda v. County of Lake*, 900 F.3d 335, 350 (7th Cir. 2018) (medical care); *Hardeman v. Curran*, 933 F.3d 816, 822 (7th Cir. 2019).

There is no dispute in this case that the defendants' only knowledge about any prior instances of physical altercations at MacFarland or episodes of self-harm are limited to a discharge summary, a document that was created by just one of the MacFarland witnesses, Dr. Jeetwani. Ex. 1 (Discharge Summary). The defendants did not speak with any of the other witnesses identified by Defendants at MacFarland at any point before Ms. Rusher killed herself, and they did not know any of the details of the incidents Defendants intend to elicit testimony about prior to her death. Accordingly, the Court should bar this after-acquired evidence because it is not relevant to Plaintiff's claims. *See, e.g., Fleming v. Champaign Cnty.*, 2021 WL 6201383, at *5 (C.D. Ill. Nov. 23, 2021); *Stennis v. Berry*, 2018 WL 11252808, at *9 (C.D. Ill. Sept. 27, 2018).

***Character and propensity evidence is barred by Federal Rule of Evidence 404***.  The defendants' only plausible purpose in introducing the testimony and documentary evidence— particularly Ms. Rusher's past physical confrontations, which defense counsel has focused on in depositions—would be to suggest to the jury that because Ms. Rusher engaged in such conduct in one facility, she had a propensity to engage in such conduct at the jail.  Rule 404(b) prohibits introducing evidence for this purpose. "Rule 404(b) excludes relevant evidence of other crimes, wrongs, or acts if the purpose is to show a person's propensity to behave in a certain way,"

*United States v. Gomez*, 763 F.3d 845, 855 (7th Cir. 2014), and though other-act evidence is admissible for other purposes such as showing "plan" or "knowledge," *id.*, a court examining introduction of other-act evidence for a "non-propensity" purpose must still examine the chain of reasoning that supports the non-propensity purpose to ensure that no link in that chain rests on a propensity inference. *Id.* at 856. That means it is not enough for Defendants to assert that the evidence is probative of some issue in the case, they must also answer the follow up question: Why? *See United States v. Miller*, 673 F.3d 688, 698 (7th Cir. 2012). "Unless there is a persuasive and specific answer to the question . . . then the real answer is almost certainly that the evidence is probative only of propensity." *Id*. at 699; *see Gomez*, 763 F.3d at 856 (the Court must ask "how the evidence is relevant without relying on a propensity inference."). Here, the inescapable purpose of introducing testimony by employees at McFarland about Ms. Rusher's other acts is to prove Ms. Rusher's propensity to engage in such conduct.

Even if introducing testimony and evidence about Ms. Rusher's past acts had some non-propensity purpose, the Court should still exclude this evidence under Rule 403. The Seventh Circuit in *Gomez* specifically directed that even if a court is satisfied that admission of other-acts evidence is proper under Rule 404(b), it must still consider whether Rule 403 requires exclusion. *Id*. at 856-57 (Rule 403 applies "with full force in this context, because "[o]ther-act evidence raises special concerns about unfair prejudice because it almost always carries some risk that the jury will draw the forbidden propensity inference.").

***The evidence is unduly prejudicial***. In this case, the concerns about unfair prejudice under Rule 403 are particularly acute. On one side of the ledger, testimony and documents about Ms. Rusher's behavior at McFarland have virtually no non-propensity value. As noted above, it is not and cannot be relevant to the question of whether Defendants' conduct was objectively

reasonable. Instead, Defendants appear to be asking a lay jury to speculate about hypothetical future behavior in a counter-factual world had Defendants not engaged in the conduct they did. That type of speculation is well outside the the bounds of the Rules of Evidence, particularly when the jury will be tempted to reach the impermissible conclusion that, in hindsight, Plaintiff would have "acted in a manner that justified the [defendants'] reaction." *Palmquist*, 111 F.3d at 1340 (quoting *Wallace v. Mulholland*, 957 F.2d 333, 336 (7th Cir. 1992) (upholding decision to exclude evidence "not within [defendant officer's] personal knowledge at the time" of the Fourth Amendment violation). Because that is not the proper analysis in determining Plaintiff's claims, the evidence should be excluded pursuant to Rule 403. *West v. Love*, 776 F.2d 170, 174 (7th Cir. 1985) (Rule 403 is intended to ensure that the case is not decided on an improper basis).

Moreover, even if it were not impermissible as a legal matter, which it is, such evidence would be inadmissible because its only relevance would require the jury to speculate about a counter-factual hypothetical that would require significant expertise on the jury's part. It is axiomatic that juries may not be permitted to speculate in specialized areas of knowledge that require expertise and expert testimony. *See Fulton v. Theradyne Corp.*, No. 06-cv-1321, 2007 WL 772953, at *4–5 (N.D.Ill. Mar. 12, 2007) (granting summary judgment because there was no expert with "specialized knowledge" to testify regarding material fact requiring specialized knowledge, and it "would be pure speculation if the jury was allowed to assess" those facts without expert testimony). Testimony and documents about the things Ms. Rusher did at McFarland will have little relevance or evidentiary value to a lay jury in understanding the nature of her mental illness.

The McFarland evidence in this motion has no legitimate relevance to the facts at issue in this case. On the other side of the scale, however, the evidence portends enormous prejudice, as

witnesses, some of them victims, describe multiple physical confrontations and self-harm acts by Ms. Rusher.  It would be exceptionally difficult for a lay jury to conclude anything from this evidence, but that Ms. Rusher had a bad character and deserved what happened to her.  Rule 403 exists precisely to prevent prejudicial evidence of vanishing relevance to be introduced at trial.

WHEREFORE, Plaintiff respectfully requests that all eyewitness testimony of physical confrontations between Ms. Rusher and other persons at McFarland be excluded from trial.

## PLAINTIFF'S SECOND MOTION *IN LIMINE*
## TO BAR EVIDENCE OF CRIMINAL HISTORY

Plaintiff moves this Honorable Court *in limine* to bar any evidence that Defendants may attempt to offer concerning the criminal history of any party or witness, including decedent Tiffany Rusher. "Criminal history" includes any other criminal charges resulting in a conviction; any other warrants, arrests, and/or criminal charges that were dismissed and/or did not result in a conviction; any arrests, charges, findings, and/or convictions from any juvenile court or proceeding; periods of incarceration in any jail or other correctional facility other than the Sangamon County Jail from December 2016 through March 2017; evidence of any court proceedings related to any of the above described categories of evidence; and any status as a result of a conviction, including registration on any sex offender registry.

### ARGUMENT

Evidence of any prior charges or convictions is irrelevant, substantially more prejudicial than probative, and inadmissible character evidence. FRE 401, 402, 403, 404 Whether Ms. Rusher or any other party or witness had previously been charged with or convicted of any crime is irrelevant to the issues in this case.

Under Rule 401, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Unless otherwise provided by law, relevant evidence is admissible and irrelevant evidence is not. Fed. R. Evid. 402. Relevant evidence remains subject to the restrictions of Rule 403, which states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Ms. Rusher's criminal history, including a prior conviction for aggravated criminal sexual abuse, and an arrest and criminal charges (that remained pending at the time of her death) for aggravated battery, along with any evidence regarding the facts of those alleged incidents, has no relevance to the case and is highly likely to unfairly prejudice a jury against the plaintiff, Ms. Rusher's estate.  As the Seventh Circuit has observed, "[p]resenting a §1983 plaintiff's criminal history to the jury presents a substantial risk that the jury will render a defense verdict based not on the evidence but on emotions or other improper motives, such as a belief that bad people should not be permitted to recover from honorable police officers." *Barber v. City of Chicago*, 725 F.3d 702, 714 (7th Cir. 2013). In this case, that risk is even greater because of the nature of the arrest and conviction, and because Ms. Rusher will not be present to defend herself against any such attacks on her character by Defendants.

Courts in this Circuit have excluded evidence of convictions, even when the witness has taken the stand and been subject to the possibility of such evidence becoming admissible pursuant to Federal Rule of Evidence 609, when the nature of the conviction was (like Ms. Rusher's) likely to evoke unfair prejudice on the part of the jury. *Christmas v. Sanders*, 759 F.2d 1284, 1292 (7th Cir. 1985) (recognizing that evidence of a testifying party's convictions of a sex-related crime posed a possibility of "*substantial* prejudice"); *see also, e.g., Moriconi v. Koester*, 2015 WL 328590, at *3 (C.D. Ill. Jan. 26, 2015) (recognizing that crimes involving violence tend to have a greater risk of prejudice); *Stanbridge v. Mitchell*, 2012 WL 1853483, at *2 (C.D. Ill. May 21, 2012) (excluding aggravated criminal sexual abuse conviction); *Earl v. Denny's, Inc.*, 2002 WL 31819021, at *2-3 (N.D. Ill. Dec. 13, 2002) (excluding aggravated criminal sexual abuse conviction);  *Coles v. City of Chicago*, 2005 WL 1785326, at *2-3 (N.D. Ill. July 22, 2005) (excluding armed robbery conviction). And of course in this case, because Ms. Rusher is

deceased and will not be testifying, this evidence is not admissible under Rule 609, which permits for the introduction of certain conviction evidence in order to impeach a witness.

Without Rule 609 as grounds to admission, there is simply no relevant purpose for which evidence of Ms. Rusher's conviction could be admitted. *See Earl*, 2002 WL 31819021, at *2 ("Evidence of prior convictions is not admissible to 'stink up' a witness's character"). And the same is true of Ms. Rusher's arrest for aggravated battery or the facts surrounding that arrest.[1] Certainly, Defendants may not introduce the evidence in order to show that Ms. Rusher was violent at the jail or would have behaved violently had she not been housed in isolation because that sort of argument would expressly violate Rule 404(b). Fed. R. Evid. 404(b); *see also United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (Rule 404 excludes evidence that whose relevance relies on the individual's propensity to act). In *Gomez*, the Seventh Circuit explained that even if the party seeking to introduce the evidence can articulate a "permitted" purpose for its admission under Rule 404(b)(2), the court must still examine the chain of reasoning that supports the non-propensity purpose to ensure that no link in that chain rests on a propensity inference. *Gomez*, 763 F.3d at 856. That means it is not enough for Defendants to assert that the evidence is probative of some issue in the case, they must also determine why such evidence is probative and under what chain of reasoning. *See United States v. Miller*, 673 F.3d 688, 698 (7th Cir. 2012); *see also Gomez*, 763 F.3d at 856 (the court must ask "how the evidence is relevant without relying on a propensity inference"). There is no such argument available to Defendants in this case and thus evidence about Ms. Rusher's arrest (and the circumstances surrounding it), like evidence of the conviction, should be excluded.

Moreover, even if the Court finds that there is some relevant, non-propensity based

---

[1] Evidence of other alleged assaults while at MacFarland are inadmissible for similar reasons. That evidence is address in Plaintiff's Motion *in Limine* No. 1.

purpose for admission of this criminal history, it should still exclude this evidence under Rule 403. The Seventh Circuit in *Gomez* specifically directed that even if a court is satisfied that admission of other-acts evidence is proper under Rule 404(b), it must still consider whether Rule 403 requires exclusion. *Id.* at 856-57 (Rule 403 applies with full force in this context, as [o]ther-act evidence raises special concerns about unfair prejudice because it almost always carries some risk that the jury will draw the forbidden propensity inference."). In this case, the concerns about unfair prejudice under Rule 403 are particularly present because the jury will consider any evidence of Ms. Rusher's prior arrest and conviction as evidence that she was less worthy of constitutional rights, or perhaps more deserving of the isolation and mental anguish that Defendants forced upon her. Obviously, such considerations would be blatantly improper and contrary to law. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Accordingly, even if the Court finds that Ms. Rusher's criminal history has some relevance and is not barred by Rule 404, it should nevertheless bar this evidence pursuant to Rule 403.

The same is true of other arrests or alleged bad acts of Plaintiff's family or witnesses. Such evidence has no relevance, is not admissible under Rule 404, and in any event is unfairly prejudicial and therefore should be excluded pursuant to Rule 403.

WHEREFORE, Plaintiff respectfully moves this court to prohibit all references to the criminal history or alleged bad acts of any party or witness, including the decedent, Ms. Rusher.

**PLAINTIFF'S THIRD MOTION *IN LIMINE* TO EXCLUDE CONTENTION THAT AS A MATTER OF LAW, DEFENDANTS COULD NOT HAVE TRANSFERRED TIFFANY RUSHER TO A MENTAL HEALTH CLINIC FOR OUTPATIENT CARE**

Plaintiff moves this Honorable Court *in limine* to exclude the contention that the Sangamon County Jail could not have transferred Tiffany Rusher to a Mental Health clinic for outpatient care, because the statute Defendants rely on did not prohibit the transfer as a matter of law.

## ARGUMENT

Defendants intend to introduce evidence that they could not have transferred Ms. Rusher to a Mental Health outpatient facility for a higher level of treatment. The record is undisputed that Sangamon County Jail did not have an inpatient psychiatric unit or facility. Thus, Defendants were required to take Ms. Rusher to an outpatient mental health facility to receive an appropriate level of care for her mental illness.

Defendants intend to argue at trial that state law prohibited them from transferring Ms. Rusher to an inpatient psychiatric facility while felony charges were pending. Dkt. 177 at 13-14 (405 ILCS 5/3-100); Dkt. 180 at 48 (same). This is an erroneous reading of the statute. The statute Defendants rely on prohibits *circuit courts* of the ability to order individuals with pending felony charges to be involuntarily committed to a psychiatric institution, but the state law says nothing about voluntary commitments, or about a *jailer's* ability to bring a detainee to a psychiatric institution for treatment.

Defendants could have asked Ms. Rusher if she wanted to go to an outpatient psychiatric facility for a higher level of treatment. If she had agreed to do so, it would have been a voluntary commitment, and permissible under the law. Defendants also had the power to take any detainee in their custody out of the jail to a medical or mental health facility for a medical appointment.

This is a common occurrence in correctional facilities across the state to ensure detainees and prisoners in their care have access to the appropriate level of treatment. *See Petties v. Carter*, 836 F. 3d 722, 729 (7th Cir. 2016) (discussing line of cases that address care of prisoners by offsite specialists).

A request by Defendants Abraham or Shmikler to voluntarily transfer Ms. Rusher to an inpatient psychiatric facility— given her unmet treatment needs at the jail—would have been permissible under the law. Moreover, the law permitted the Defendants to ensure that Ms. Rusher would not evade custody by leaving the facility upon transfer. She would have been permitted to leave the facility only upon signing a 5-day release request, which would permit her re-confinement at the jail if they sought to end their voluntary commitment to the facility. *See* 405 ILCS 5/3-400(b)(3). Further, Defendants Abraham and Shmikler themselves believed such transfers were possible. Dr. Abraham testified that he had a responsibility to refer detainees to another facility to receive a higher level of care, which he said could be done by making a referral to a psychiatrist. Dkt. 191 at 20, PSOF ¶¶ 125, 126. Mr. Shmikler likewise testified that he had the power to refer detainees for offsite psychiatric care. *Id.*, PSOF ¶¶ 125.

The law Defendants rely on did not prohibit them from voluntarily transferring Ms. Rusher offsite for outpatient care. Any evidence or argument at trial that it did should therefore be excluded.

WHEREFORE, Plaintiff respectfully requests an Order *in limine* to exclude Defendants from arguing or presenting evidence at trial that they could not have transferred Ms. Rusher to an outpatient facility for mental heath treatment as a matter of law.

**PLAINTIFF'S FOURTH MOTION IN LIMINE TO EXCLUDE
PURPORTED EXPERT TESTIMONY BY NON-RETAINED WITNESSES**

Plaintiff moves this Honorable Court *in limine* to prohibit opinion testimony disclosed

under Federal Rule of Civil Procedure 26(a)(2)(C) and offered pursuant to Federal Rule of

Evidence 702, 703, or 705 by the following witnesses:

1. Erin Kate Daniels (County)
2. Tracy Hammitt (County)
3. Ronda Duncan Jacobs (County)
4. Kelly Tucker (County)
5. Dr. Brian Richardson (ACH and County)
6. Dr. Ajay Jeetwani (ACH and County)
7. Breana Foster (ACH and County)
8. Kimberly Swenka (ACH and County)
9. Sarah Broyles (ACH and County)
10. Melinda Oldham (ACH and County)
11. Brenda Booth (ACH and County)
12. Dr. Melissa Caldwell (ACH)
13. Arun Abraham (ACH),
14. Barbara Eggemeyer (ACH)

**ARGUMENT**

The Court should exclude any opinion testimony that was described in non-specific or

overbroad terms, because such disclosures do not comply with Rule 26(a)(2)(C). Further, the

bulk of the defendants' limited itemized disclosures fall into the following categories:

1. testimony that would not be helpful to the jury and thus should be excluded;
2. testimony regarding opinions not formed during the course of treatment and thus prohibited under Rule 26(a)(2)(C);
3. and testimony the witness is not qualified by knowledge, skill, experience, training, or education to give.

This court should exclude all such testimony. All defendants have disclosed witnesses pursuant

to Rule 26(a)(2)(C) whose proposed expert testimony is improper and should not be allowed at

trial.

I. **Any opinion not specified in the disclosure but incorporated by reference to thousands of pages of discovery, should be excluded.**

Both sets of defendants attempt to incorporate any opinion contained in many thousands of pages of medical records and deposition testimony rather than specifying which opinions their purported experts will offer. *See* Ex. 2 (Sangamon County Defs.' Disclosures); Ex. 3 (ACH Defs.' Disclosures). Each of the County defendants' disclosures includes a catch-all term indicating the witnesses may testify to anything contained in thousands of pages of medical and mental health records and thousands of pages of deposition testimony in this case. For example, in Ajay Jeetwani's disclosure, defendants note he "may be called to testify with respect to any and all opinions given in his deposition taken on October 15, 2019. He may also be called to testify regarding any opinions noted in his records generated and maintained at McFarland Mental Health Center as it relates to Tiffany Rusher." *Id.* at __. The McFarland records contain more than 1,500 pages. This is only one example; there is a similar catch-all description in each of the defendants' 11 non-retained expert disclosures.

Similarly, ACH defendants failed to disclose specific opinions for almost all of their purported non-retained experts, including Arun Abraham, Brian Richardson, Ajay Jeetwani, Breana Foster, Kimberly Swenka, Sarah Broyles, Melinda Oldham, Brenda Booth, or Barbara Eggemeyer. The disclosures for these witnesses are functionally identical. Each contains a statement similar to the following:

> [Name] is a [position] that treated Tiffany Rusher at [facility].
> Based upon his training, experience, and personal observation [name] is expected to testify as follows, in accordance with the records and his deposition testimony:
> 1. [name] will testify about Tiffany Rusher's mental health status, diagnosis and treatment at [facility].
> 2. [name] will testify about his interactions with and observations of Tiffany Rusher, including her self-injurious and assaultive behaviors.
> 3. [name] will testify about Tiffany Rusher's transfer/discharge to/from [facility].

*See* Ex. 3. While disclosures under Rule 26(a)(2)(C) require less detail than those under Rule 26(a)(2)(B) a party still must state with specificity the opinions a witness is expected to testify to. Boilerplate or non-specific descriptions are insufficient. *Dilley v. Holiday Acres Props.,* No. 16-cv-91-jdp, 2017 U.S. Dist. LEXIS 82721, at *6-7 (W.D. Wis. May 31, 2017).

All of the disclosures from both sets of defendants attempt to encompass anything contained in the medical records or deposition testimony ("in accordance with the records and his deposition testimony"). This is improper. Non-retained expert disclosures are insufficient where they do no more than point "to a large trove of facts and data." *Jaworek v. Mohave Transp. Ins. Co.,* No. 19-cv-820-wmc, 2020 U.S. Dist. LEXIS 110002, at *7 (W.D. Wis. June 23, 2020) citing *Meffert Oil Co., Inc.*, 2012 U.S. Dist. LEXIS 202895, 2012 WL 13042519. That is exactly what defendants have done here, by pointing to the large troves of facts and data contained in many thousands of pages of medical records and deposition testimony rather than identifying any specific opinions they expect to elicit.

The remedy for failing to properly disclose the opinions of non-retained experts is the same as for retained experts: the undisclosed testimony should be excluded. *Jaworek*, 2020 U.S. Dist. LEXIS at *6.  Thus, plaintiff asks this court to exclude any expert opinion testimony of any non-retained expert that was not specifically disclosed in compliance with Rule 26(a)(2)(C) prior to trial.

## II.    Defendants should be prohibited from eliciting improper opinion testimony from any of their disclosed non-retained expert witnesses.

County defendants included some itemized pieces of proposed expert testimony in their disclosures in addition to their overbroad assertions of "any opinions noted in records" or "provided in deposition testimony." ACH defendants included some itemized opinions in their disclosure only for Melissa Caldwell. However, the vast majority of these items from all

defendants fall into one of the following categories and therefore should not be allowed at trial.

**A.      Testimony that would not be helpful to the jury or invades the province of the jury.**

A large portion of the disclosures are opinions that would not be helpful to the jury. For example, County defendants propose that "Ms. Hammitt will also testify that all self-harm attempts by inmates, including those by Tiffany Rusher, were taken seriously by jail staff and by medical staff"  and that Brian Richardson will testify that "Based upon Tiffany Rusher's observed behavior and conversations, Tiffany Rusher appeared to be looking forward to going home when leaving Logan Correctional Center." Ex. 2 at 3, 5. These are just two examples from the disclosures of "inferences from the record that [the proposed expert] is no more qualified than the jury to draw. *TRW Title Insurance Co. v. Security Union Title Insurance Co.*, 887 F. Supp. 1029, 1032 (N.D. Ill. 1995).

Similarly, ACH proffered that Melissa Caldwell would testify "After a years-long investigation unrelated to ACH, the Department of Justice required a psychiatrist in the Grant County, Kentucky, Jail. The DOJ misunderstood the kind of care a master's-educated counselor (like an LCSW) could provide and insisted on a psychiatrist." Whether the Department of Justice and its experts "misunderstood" something is not a conclusion the jury requires an expert to provide; a witness can testify to facts that may support that inference, but Caldwell is no better positioned to opine about an entity's "misunderstanding" than the average juror.  In other words, these types of opinions are conclusions that the jury could reach on its own based on facts presented at trial, and thus the expert's opinions are not helpful and should be excluded.

**B.      Testimony not formed during the course of treatment is not admissible under Rule 26(a)(2)(C).**

"A treating physician can provide an expert opinion without submitting a written report if

the physician's opinion was formed during the course of the physician's treatment, and not in preparation for litigation." *Anderson v. P&G*, No. 1:19-cv-04531-JRS-DLP, 2021 U.S. Dist. LEXIS 52118, at *4 (S.D. Ind. Mar. 19, 2021). Thus "treating physicians and other medical treaters may testify as to their personal observations completed during the course of treatment, but they may not opine as to causation, prognosis, or future disability." *Glanz v. Illinois*, No. 15-cv-6337, 2018 WL 11195497, at *3 (N.D. Ill. Mar. 15, 2018). Rule 26(a)(2)(C) witnesses are "merely testifying as an occurrence witness as to what observations, diagnoses and conclusions were reached during treatment," whereas a treating expert must submit a report where they "seek[] to offer testimony that goes beyond the physician's work as a treater[.]" *Zitzka v. Vill. of Westmont*, No. 07 C 0949, 2011 WL 4738249, at *11 (N.D. Ill. Oct. 7, 2011).

Defendants have proffered opinions from treating medical professionals that exceed this scope. For example, county defendants propose that "Mr. Richardson" Tiffany's treating psychologist during her incarceration at Logan Correctional, "may be called to testify that Tiffany Rusher's housing conditions at the Sangamon County Jail were not the cause of her self-injurious behaviors." Dr. Richardson was no longer treating Ms. Rusher when she was housed at the Sangamon County jail, and thus this opinion could not have been formed during the course of his treatment of her at Logan. Similarly, defendants have identified numerous employees at McFarland as Rule 26(a)(2)(C) experts, *see* Ex. 2; Ex. 3, but their testimony too must be limited to the treatment they were providing to Ms. Rusher at the time—what Ms. Rusher might do or how she might fare once she left McFarland was not germane to that treatment, and thus cannot be offered by a treater-expert under Rule 26(a)(2)(C).

C.    **Testimony the witness is not qualified by knowledge, skill, experience, training, or education to give is inadmissible.**

Finally, the disclosures include many opinions that witnesses are not properly qualified to give. For example, defendants propose that Tracy Hammit, a nurse, will offer testimony that "Ms. Rusher suffered from a personality disorder and did not believe that she suffered from an acute mental illness as opposed to a personality disorder." Nurses are not qualified to diagnose medical conditions or mental health disorders, and indeed it is not part of their jobs. This purported testimony falls outside Ms. Hammit's expertise as a nurse and she should not be allowed to provide such opinions to the jury. Likewise, Melissa Caldwell was proffered as an expert by ACH defendants to opine that "Sangamon County Jail policies met the standard of care and were in line with ACA guidelines and Illinois law." Ex. 3 at 3. Yet she is not a lawyer nor otherwise qualified as a legal expert to provide an opinion to the jury about compliance with the law.

Defendants failed adequately to disclose the opinions of their proposed non-retained expert witnesses, fand their disclosed opinions go beyond the scope of opinions that a non-retained expert may permissibly offer. This Court should exclude any opinion testimony that was not specifically disclosed—that is, any opinion drawn from a large trove of facts or data—and should further prohibit any improper expert opinion that is not helpful to the jury, was not formed during the course of treatment, or is offered by someone not qualified as an expert.

WHEREFORE, Plaintiff respectfully requests an Order *in limine* to exclude Defendants from offering expert opinion testimony from the witnesses discussed above.

## PLAINTIFF'S FIFTH MOTION *IN LIMINE* TO BAR DEFENDANTS FROM CALLING UNDISCLOSED WITNESSES

In this motion *in limine* Plaintiff requests that the Court bar Defendants from calling any witnesses that were not disclosed in response to Plaintiff's interrogatory, including rebuttal witnesses. This includes, minimally, the following witnesses, who were identified by the Sangamon Defendants for the first time in their Rule 26(a)(3) disclosures as witnesses who might be called as rebuttal witnesses at trial: Amber Dowers, Michelle Miner, and John Beck. In support of their motion, Plaintiff states:

## BACKGROUND

The defendants identified certain witnesses in their Rule 26(a)(1)(A)(i) disclosures. Rule 26(a)(1)(A)(i) does not require parties affirmatively to identify witnesses who will be called for impeachment. In light of that exception Plaintiff served the following interrogatory on all Defendants at the outset of discovery in this case:

> Identify by name and address all persons who have knowledge of facts that relate to any of the claims or defenses in this action, including but not limited to all persons who are not listed in Defendant's Rule 26 Initial Disclosures. If you answer this Interrogatory by incorporating Documents, please list under oath the identities of any and all additional persons not listed in these Documents, or, if there are no such additional Persons with knowledge responsive to the Interrogatory, please so state under oath.

The Defendants listed certain persons but did not list witnesses Dowers, Miner, and Beck. Instead, Defendants listed Dowers, Miner, and Beck for the first time in their Rule 26(a)(3) disclosures as rebuttal witnesses for trial, after fact discovery in this case had closed.[1] In correspondence defense counsel has since confirmed that the witnesses were only disclosed for

---

[1] Defense counsel indicated that Defendants are not obligated to identify impeachment witnesses, and that Dowers, Miner, and Beck were identified as a courtesy. There may be additional, unidentified impeachment witnesses as well.

the first time in Defendants' Rule 26(a)(3) disclosures.[2]

## ARGUMENT

The Federal Rules of Civil Procedure provide for required initial disclosure of documents and witnesses a party will rely upon at a hearing or trial, unless such evidence would be used "solely as impeachment." *See* Fed. R. Civ. P. 26(a)(1). Parties may, however, use other discovery tools to properly obtain evidence that goes beyond that which is required in initial disclosures—including impeachment evidence.  "Parties are excused from producing evidence used solely for impeachment purposes during initial disclosures. Fed. R. Civ. P. 26(a). However, a party must 'disclose impeachment evidence in response to a specific discovery request.'"  *Sepe v. Gordon Trucking, Inc.*, 2017 WL 2547034, at *5 (E.D. Cal. June 13, 2017) (quoting *Newsome v. Penske Truck Leasing Corp.*, 437 F. Supp. 2d 431,436 (D. Md. 2006)); *see, e.g.*, *Scott v. Palmer*, 2015 WL 1637781, at *5 (E.D. Cal. Apr. 13, 2015) ("Plaintiff is entitled to discover relevant evidence, including evidence intended for impeachment"); *Salazar v. Monaco Enterprises*, Inc, No. 2:12-CV-00186-LRS, 2015 WL 8773279, at *3 (E.D. Wash. Dec. 14, 2015) ("'A party may not, under any circumstances, hold back materials responsive to a proper discovery request because it prefers to use the evidence as surprise impeachment evidence at trial.'" (quoting *Varga v. Rockwell International Corp.*, 242 F.3d 693, 697 (6th Cir. 2001) (emphasis added)).  Notably, the impeachment information need only be responsive to the discovery request as written; a discovery request need not ask for "impeachment" information by name.  *See Morris v. Metals USA*, No. 2:09-CV-1267-DCN, 2011 WL 94559, at *6 (D.S.C. Jan. 11, 2011) (excluding impeachment evidence that was responsive to a discovery request; discovery request did not seek

---

[2] Plaintiff does not know what testimony these witnesses might offer and whether it is truly for impeachment.  For purposes of this motion Plaintiff will assume the testimony is purely for impeachment.

"impeachment" information by name).  The party must also supplement its responses to discovery served under Rule 26(b) throughout discovery.  *See* Fed. R. Civ. P. 26(e).

In this case, Plaintiff's interrogatory called on the defendants to identify "*all* persons who have knowledge of facts that relate to any of the claims or defenses in this action[.]"  *Supra.* That plainly called for disclosure of impeachment witnesses, who possess responsive knowledge by definition.  The defendants' failure to identify Amber Dowers, Michelle Miner, and John Beck (or additional, unidentified impeachment witnesses) is thus flatly impermissible.  Rule 26(a) may not have required the defendants to disclose those (and any other) impeachment witnesses affirmatively, but no privilege attached to the identity of those witnesses if it was requested under discovery propounded pursuant to Rule 26(b).

The appropriate remedy for the defendants' failure to disclose impeachment witnesses is exclusion.  "Rule 37 provides that a party who fails to amend an interrogatory response under Rule 26(e)(2) '*is not*, unless such failure is harmless, permitted to use as evidence . . . information not so disclosed.'"  *Westefer v. Snyder*, 422 F.3d 570, 584 (7th Cir. 2005) (quoting Fed. R. Civ. P. 37(c)(1) (emphasis original)).  "[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless."  *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir.1998).

Here, there was no justification for failing to disclose the impeachment witnesses. Plaintiffs' interrogatory plainly called for their disclosure, but the defendants, seeking to maintain the element of surprise, effectively invented a privilege against disclosure in response to Rule 26(b) discovery that does not exist.  There was no justification for that refusal to identify the witnesses.  The failure also promises significant prejudice to Plaintiff, who took the steps necessary to identify impeachment witnesses but was silently thwarted in doing so.  Plaintiff now

faces the prospect of multiple witnesses offering unknown impeachment evidence that she took the proper steps to identify and investigate during the discovery period.  The Court should not allow Plaintiff to be prejudiced in this manner.

WHEREFORE, Plaintiff respectfully requests that all eyewitness testimony of physical confrontations between Ms. Rusher and other persons at McFarland be excluded from trial.

**PLAINTIFF'S SIXTH MOTION *IN LIMINE* TO BAR EVIDENCE OR ARGUMENT THAT THE DEFENDANTS' OBLIGATION TO PROVIDE MEDICAL CARE IS MITIGATED BECAUSE THE JAIL'S PRIMARY MISSION IS TO INCARCERATE**

Plaintiff hereby moves the Court *in limine* to bar Defendants from introducing evidence or argument that their obligation to provide Ms. Rusher with appropriate mental healthcare was mitigated because the primary mission of a jail is to incarcerate rather than to     provide medical care.

Defendants offered expert testimony that jails are not obligated to provide treatment to detainees with severe mental illness. They opined that while the standard of care in the community may be to provide clinically indicated treatments that are available for a severely mentally ill person, jails are not required to meet this standard because "[a] jail's focus is not to provide psychiatric care," but rather to provide legal detention. *See* ECF 212 at 22-23 (quoting from written opinion and deposition of defense expert Michelle James). Mental health treatment in jails thus is simply "not available", meaning that "[s]ingle cell housing . . . was the . . . most appropriate way" to house a severely mentally ill person like Ms. Rusher. *Id.* (quoting from written opinion and deposition of defense expert Michelle James). In other words, the defendants' experts have offered the opinion that because their primary mission is to incarcerate, jails are not obligated to provide clinically indicated treatment to detainees who are seriously mentally ill.

The Court granted Plaintiff's motion to exclude this opinion on *Daubert* grounds. *See* ECF 269 at 10. Plaintiff anticipates that Defendants may nevertheless seek to introduce the same proposition through argument or other testimony. Doing so would be highly improper, because it would introduce a defense that the courts have specifically rejected since *Estelle v. Gamble*, 429 U.S. 97 (1976). Put simply, the law is the opposite of what Defendants' experts contend:

precisely *because* correctional facilities incapacitate the person they are detaining, "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." *Estelle*, 429 U.S. at 103.  A correctional facility cannot incarcerate a person and then refuse to provide them clinically-indicated medical care on grounds that their primary mission is incarceration, not provision of medical care.  *Cf. Paine v. Cason*, 678 F.3d 500, 506 (7th Cir. 2012) ("Police must provide care for the serious medical conditions of persons in custody. That right is clearly established. . . . [and] it applies even if the custody is expected to be short." (citing     *Farmer v. Brennan*, 511 U.S. 825 (1994)).  Such serious medical needs include mental health care.  *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 671 (7th Cir. 2012) ("Because he was incarcerated, the jail had an obligation to address Rice's serious medical needs. That obligation included a duty to provide psychiatric care to Rice as needed." (citing *Estelle, 427 U.S. at 97, 103*)). And both federal and state courts have rejected any proposition that the standard of care differs when the situs of the care is a detention facility. *Moss v. Miller*, 625 N.E.2d 1044, 1045 (Ill. App. Ct. 1993); *Nolan v. United States*, 2015 WL 5159888, at *4 (N.D. Ill. Sept. 1, 2015).

In light of these precedents, this Court must not permit Defendants to argue or elicit testimony or other evidence suggesting that the jail's "primary mission" was detention and not medical or mental health care for individuals under its care. To hold otherwise would inflict severe prejudice on Plaintiff by asking the jury to act contrary to Supreme Court precedent, and consequently require Plaintiff and this Court to engage in detailed remedial instructions about binding Supreme Court and Seventh Circuit precedents. This Court has already recognized the impropriety of this evidence in the context of Defendants' experts, and it should similarly hold such arguments are unavailable to Defendants' themselves or their counsel in argument.

As set forth above, the defendants should not be permitted to introduce evidence or contend to a jury that because they operate a jail for the purposes of incarceration, or for which incarceration is a priority, the standards of community care do not apply to them or the treatment that they were obligated to provide or obtain for Ms. Rusher.

WHEREFORE, Plaintiff respectfully requests this Court to exclude any evidence that Ms. Rusher contributed to her injuries or was contributorily negligent.

## PLAINTIFF'S SEVENTH MOTION *IN LIMINE*
## TO BAR CUMULATIVE EXPERT TESTIMONY

Plaintiff moves this Honorable Court *in limine* under Federal Rule of Evidence 403 to bar

the introduction of certain expert opinions as cumulative and duplicative.

## ARGUMENT

Defendants in this case have disclosed the reports of five different experts pursuant to Rule

26(a)(2)(B). These reports contain many identical opinions and so Plaintiff expects these experts'

testimony at trial will also be identical.  "[M]ultiple expert witnesses expressing the same

opinions on a subject is a waste of time and needlessly cumulative.  It also raises the unfair

possibility that jurors will resolve competing expert testimony by 'counting heads' rather than

evaluating the quality and credibility of the testimony." *Sunstar, Inc. v. Alberto–Culver Co., Inc.*,

No. 01-cv-0736, 01 C 5825, 2004 WL 1899927, at *25 (N.D. Ill. Aug. 23, 2004) (limiting trial

testimony to one expert witness per subject on Japanese law).  Courts exclude the proffered

testimony of an expert witness when it will substantially overlap with the testimony of another

expert. *In re Testosterone Replacement Therapy Products Liability*, No. 14 C 1748, 2018 WL

1316724, slip op. at 3 (N.D. Ill. Mar. 14, 2018) (excluding an expert witness as needlessly

cumulative where his testimony "nearly completely overlapped" with that of another expert

witness).

The ACH defendants disclosed reports from three experts: Thomas Fowlkes (Ex. 4), Amy

Trivette (Ex. 5), and Michelle James (Ex. 6).  As the chart below illustrates, their opinions—

particularly those of the two doctors, Fowlkes and Trivette—are in many respects identical. As

merely one example, all three experts express the opinion that Ms. Rusher's housing placement

in the jail was appropriate. *Fowlkes report* at 8 ("Her housing assignment was appropriate");

*Trivette report* at 4 ("Her assignment to a high-risk observation cell was appropriate"); *James report* at 5 ("Plaintiff's expert opinions expressed concern that Ms. Rusher was maintained in single cell housing during her stay at Sangamon County Jail. In my opinion this was appropriate").

| Opinion | Thomas Fowlkes, MD | Amy Trivette, MD | Michelle James, LCSW |
|---|---|---|---|
| **Medical care provided at SCJ was within the standard of care** | "The medical care provided to Ms. Rusher while she was incarcerated at SCJ from December 2016 through March 2017 was reasonable, appropriate, and well within the acceptable standard of care  at 7 | "The medical staff of the Sangamon County Sheriff's Office met the applicable standards of care in providing care to Tiffany Rusher prior to her death on 03/30/2017" | |
| **Dr. Abraham met the standard of care** | "The care provided by Dr. Abraham was completely appropriate and well within the standard of care" at 11 | "Dr. Abraham met the applicable standard of care in continuing Ms. Rusher's treatment regimen from McFarland Mental Health center." at 4 | |
| **There was no need to change her treatment when she arrived at SCJ** | "[when she arrived from McFarland] There was no indication to change her psychiatric medication regimen or to alter her mental health treatment plan" at 7 | "Dr. Abraham met the applicable standard of care in continuing Ms. Rusher's treatment regimen from McFarland Mental Health center." at 4 | |
| **Her housing placement was appropriate** | "Her housing assignment was appropriate" at 8 | "Her assignment to a high-risk observation cell was appropriate and consistent with the relevant standard of care in a correctional setting and the jail's suicide prevention policy." at 4 | Plaintiff's expert opinions expressed concern that Ms. Rusher was maintained in single cell housing during her stay at Sangamon County Jail. In my opinion this was appropriate due to Ms. Rusher's long history of self harm behaviors, assaultive behaviors and |

| | | | emotional dysregulation." at 5 |
|---|---|---|---|
| **Mr. Shmikler's assessment met the standard of care** | "[Mr. Shmikler's] evaluation, assessment, and treatment of [tiffany] were appropriate for her circumstances" at 8 | "The assessments by Michael Shmikler through the locked cell door of Ms. Rusher meets or exceeds the standard of care in a correctional setting." at 4 | "Ms. Shmikler met with Ms. Rusher for assessment on each day that he was working and that she was available in the facility. This meets the standard of care that would be expected of a social work practitioner for such a high risk / high acuity detainee in the jail setting" at 4 "Mr. Shmikler met with Ms. Rusher at her cell door, talking with her through the opening in the cell door. In my opinion this was appropriate in Ms. Rusher's situation." at 4 |
| **It was appropriate not to monitor Tiffany one-on-one** | "it would not be reasonable to provide one on one monitoring of Ms. Rusher for the entire time she was housed at SCJ" at 8 | "one on one observation is rarely used in correctional settings, particularly with assaultive individuals" at 3 | |
| **Her housing was not "solitary confinement"** | "A high risk observation cell with a single person housing near the booking area in a county jail is not "solitary confinement."" at 9 | "The use of an observation cell like the one utilized by Ms. Rusher does not constitute solitary confinement" at 3 | "Plaintiff experts have characterized this single cell housing as being in "solitary confinement". This is not an appropriate characterization, in my opinion." at 5 |
| **There was no need to transfer Ms. Rusher to another facility** | "There was not an indication for the SCJ medical staff to transfer Ms. Rusher to an alternate facility for a higher level of care" at 10 | "Nothing in her medical records indicates a need for her to be transferred to another facility for a higher level of care." at 3 | "Plaintiff's experts have expressed concern in their opinions that Mr. Shmikler should have recommended that Ms. Rusher be transferred to a psychiatric facility for further treatment, based upon her ongoing |

| | | | |
|---|---|---|---|
| | | | self harm behaviors. I don't agree with this opinion…. I do not believe transfer to a psychiatric facility for treatment of self harm behaviors would have decreased their frequency." at 6 |
| **Her suicide was not preventable** | "There was no way for ACH health care personnel to reasonably foresee that Ms. Rusher was going to engage in this behavior on this day, that it was going to have a fatal outcome this time, or to reasonably prevent her actions on that day" at 12-13) | "While Ms. Rusher's suicide was obviously a tragic event it was not preventable under the circumstances" at 3 | |
| **Mr. Shmikler met the standard of care** | "[Mr. Shmikler's] evaluation, assessment, and treatment of [tiffany] were appropriate for her circumstances" at 8 | "Mr. Shmikler met the appropriate standards of care in the treatment he provided to Ms. Rusher" at 4-5 | "In my opinion Mr. Shmikler was meeting this standard of care in his clinical work with Ms. Rusher." at 4 |

Similarly, the county Defendants offer two experts, Michael Jarvis (Ex. 7) and Sean Stewart (Ex. 8), who offer nearly identical opinions on multiple topics, including the reasonableness of 15-minute checks, the reasonableness of housing Ms. Rusher alone in a cell, and security staff's inability to predict suicidal behaviors.

| Opinion | Michael Jarvis | Sean Stewart |
|---|---|---|
| **Security staff's reliance on medical staff was reasonable** | "It was reasonable for the SCJ security staff to rely and follow the recommendations of the medical staff in the jail." at 5 | "It was reasonable and appropriate for the Sheriff, his Jail Administration and all jail staff to rely upon the medical and mental health staff to provide medical and mental health treatment to Tiffany Rusher and all inmates in the Sangamon County Jail." at 86 |
| **Jail staff could not** | "It is not reasonable to expect the | "Officers Whitley, Meyer and |

| have predicted Ms. Rusher's suicidal acts | SCJ staff to be prescient. as to when Ms. Rusher might engage in efforts to harm herself such that they would know exactly when to intervene to prevent her. death by asphyxiation,…The staff at SCJ could not foresee Ms. Rusher tearing a strip off a towel to be later used to asphyxiate." at 5 | Ealey acted as a reasonable officer would when escorting Tiffany Rusher back to her cell from the shower in March of 2017. A reasonable officer would not have been able to detect that Tiffany Rusher intended to harm herself as she signaled no verbal intent to do so and exhibited no behavioral signals to jail staff of her intent according to the record." at 96-97 |
|---|---|---|
| It was reasonable to restrict Ms. Rusher's possessions | "It was reasonable to restrict possessions from Ms. Rusher in an effort to keep her from harming herself." at 3 | "It was appropriate for jail staff to limit and restrict Tiffany Rusher from having property when such property appeared to pose an imminent risk of harm to her." at 100 |
| It was reasonable to house Ms. Rusher away from other inmates | "Ms. Rusher was housed in a jail cell because she was an inmate at SCJ. The restrictions on her interactions were appropriate based upon what was known about her behaviors." at 4 | "It was appropriate to limit Tiffany Rusher's contact with other inmates based upon her history reported on intake." at 100 |
| Ms. Rusher's placement was not solitary confinement | "Placing an inmate in a cell by herself is not solitary confinement." at 4 | "Tiffany Rusher's confinement in the jail was not solitary confinement." at 100 |
| The jail's use of 15 minute checks was reasonable | " It was reasonable for the SCJ security staff to rely and follow the recommendations of the medical staff in the jail. This included the use of every 15 minute checks used by security staff and recommended by the mental health providers, which is in compliance within the community standard" at 5 | Sangamon County Jail policies requiring 15 minute checks before mental health requires same are reasonable and appropriate. It was reasonable and appropriate far Sangamon County Jail staff to continue to perform the 15 minute checks as mental. health did not modify the need for these during Tiffany Rusher's incarceration." at 103 |

All of these duplicative opinions are impermissibly cumulative and would needlessly waste time. Therefore, Plaintiff asks this court to prohibit defendants from eliciting each opinion from more than one expert.

WHEREFORE, Plaintiff respectfully requests that this Court exclude duplicative expert opinion testimony as set forth above.

**PLAINTIFF'S EIGHTH MOTION *IN LIMINE* TO LIMIT EVIDENCE OF THE CARE THAT DEFENDANTS PROVIDED TO TIFFANY RUSHER AFTER SHE WAS <u>FOUND UNCONSCIOUS</u>**

Plaintiff moves this Honorable Court *in limine* to carefully limit evidence of the care that Defendants provided to Ms. Rusher after she was found asphyxiated in her cell at the Sangamon County Jail. While narrative evidence should be allowed, Defendants should not be permitted to put on irrelevant evidence of their actions in order to invite an improper inference of good character from the jury.

## ARGUMENT

This case concerns whether or not Defendants' conduct was objectively unreasonable, and whether such unreasonable conduct caused Ms. Rusher's injuries, including her eventual suicide by strangulation on March 18, 2017. Plaintiff will present evidence that Defendants did not provide adequate mental health treatment to Ms. Rusher, but rather isolated her from meaningful human connection by placing her in isolation, thereby aggravating her suicide risk. Plaintiff will further present evidence that Defendants Ealey, Meyer, and Whitley unreasonably failed to protect Ms. Rusher from harming herself with a towel. The medical attention that the Defendants did or did not provide to Ms. Rusher after she had already fallen unconscious as a result of her self-strangulation with the towel is irrelevant to the question of whether their conduct before her act of suicide was objectively unreasonable.

In a case where the character of a party is not at issue, like this one, a Defendant cannot be allowed to introduce his or her own good acts to invite an inference of good character and action in conformity with that character. Fed. R. Evid. 404(b); *United States v. Hill*, 40 F.3d 164, 168 (7th Cir. 1994); *Merheb v. Illinois State Toll Highway Auth.*, 2000 WL 198787, at *8 (N.D.

Ill. Feb. 10, 2000); *Capuano v. Consolidated Graphics, Inc.*, 2007 WL 2688421, at *6 (N.D. Ill.

Sept. 7, 2007).

It is true that all of the parties should be permitted to present evidence that informs the

jury of the events that occurred from the time that Ms. Rusher was found unconscious in her cell

through the time of her death. *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997)

(discussing the importance of such narrative evidence). For example, the parties can no doubt

present evidence that Ms. Rusher was removed from her cell on a stretcher and that an

ambulance was summoned to transport her to the nearest hospital. Similarly, with the proper

foundation laid, they may display video evidence of the moments after Ms. Rusher was

discovered in her cell, and the subsequent response from correctional staff.

But the opportunity to tell a simple narrative of the events that took place after Ms.

Rusher's injury should not be transformed into an opportunity to put improper "good acts"

evidence before the jury. Because the actions of the Defendants after Ms. Rusher was discovered

in her cell are not probative on the question of Defendants' objective reasonableness, negligence,

or willful and wanton conduct, undue emphasis on these actions (beyond telling the narrative

story of the events that unfolded) could only serve the illicit purpose of suggesting to the jury

that the good acts of the Defendants after Ms. Rusher's injury show the good character of the

Defendants and demonstrate that the Defendants must have acted in conformity with that good

character before Ms. Rusher's injury occurred. For example, the Defendants might argue that

they took great measures to resuscitate Ms. Rusher in an attempt to encourage speculation among

jurors that they must have paid attention to Ms. Rusher's requests for treatment before the injury.

Such argument would be improper.

33

WHEREFORE, Plaintiff respectfully requests an Order *in limine* to carefully limit its narrative value all evidence of, and argument about, the care that Defendants provided to Ms. Rusher after she was found unresponsive in her cell.

**PLAINTIFF'S NINTH MOTION *IN LIMINE* TO BAR ARGUMENT THAT TIFFANY RUSHER FUNCTIONED BETTER IN AN INSTUTITIONAL SETTING OR WAS CONTENT IN SOLITARY CONFINEMENT**

Plaintiff moves this Honorable Court *in limine* to exclude any argument from Defendants that Ms. Rusher functioned better in an institutional setting, or that she was content in solitary confinement or isolation.

## ARGUMENT

Defendants have not offered any admissible expert opinion to support a contention that Ms. Rusher functioned best in an institutional setting, such as Sangamon County Jail. This contention would require the foundation of an admissible expert opinion, but there is none; the Court held that the opinion on the subject offered by Dr. Fowlkes was unsupported and inadmissible under *Daubert* and Rule 702.  *See* ECF 269 at 8.  Likewise, no expert has offered the opinion that Ms. Rusher was content being placed in solitary confinement or isolation. Since there is no such admissible expert opinion, the defendants may not make the suggestion to a jury.

WHEREFORE, Plaintiff respectfully requests an Order *in limine* to exclude any argument that Ms. Rusher functioned best in an institutional setting, or was content in solitary confinement or isolation.

**PLAINTIFF'S TENTH MOTION IN LIMINE TO EXCLUDE OUT-OF-COURT**
**STATEMENTS BY THE DECEDENT TIFFANY RUSHER**

Plaintiff moves this Honorable Court *in limine* to exclude the out of court statements by the decedent Tiffany Rusher because they are hearsay.

## ARGUMENT

An out of court statement offered for the truth of the matter is asserted is inadmissible hearsay evidence. Fed. R. Evid. 802. Hearsay may be admitted if it falls within a recognized exception, or is considered non-hearsay. Fed. R. Evid. 803, 804, 807. Fed. R. Evid. 801. Under the rules, a statement made by a party opponent is considered non-hearsay, and thus admissible. *Id*.

Tiffany Rusher is not a party in this matter. Although she is an important person to the case, she has no claims and is not represented by counsel. Plaintiff is the administrator of Ms. Rusher's estate. The Seventh Circuit has rejected the argument that a decedent's statement may be admitted against the decedent's estate under Federal Rule of Evidence 801(d)(2), *Huff v. White Motor Corp*., 609 F.2d 286, 289-91 (7th Cir. 1979) (noting that the Federal Rules abolished privity-based admissions by leaving them out of the specifically defined non-hearsay admissions set out in Rule 801(d)(2)); *see also In re Cornfield*, 365 F. Supp. 2d. 271, 277-78 (E.D.N.Y.). Under FRE 801, only Plaintiff's statements are admissible—Ms. Rusher's are not.

Defendants intend to introduce a variety of Ms. Rusher's statements to the jury.. These include statements allegedly made to medical and security staff at the jail, staff from McFarland, and Ms. Rusher's family members. Because Ms. Rusher is not a party to the case, any statements she made to any witnesses must fall within some other recognized exception to the hearsay rules in order to be admitted. None of her statements are admissible as party admissions and thus in order to admit them there must be a showing that they fall under a different exception.

Among the statements defendants may offer are Ms. Rusher's phone calls while she was incarcerated. Those statements are inadmissible, unless they fall within a hearsay exception. These phone calls are lengthy, involving multiple speakers besides Ms. Rusher whose statements are also hearsay. Every statement contained in those recordings must fall within an exception in order to be admitted. If defendants cannot offer one for each statement, then the statements must be excluded.

WHEREFORE, Plaintiff respectfully requests an Order *in limine* to exclude Ms. Rusher's out of court statements because they are hearsay.

**PLAINTIFF'S ELEVENTH MOTION *IN LIMINE* TO EXCLUDE ARGUMENT
REGARDING TIFFANY RUSHER'S ARREST AND TRANSFER ON DECEMBER 15**

Plaintiff hereby moves to exclude evidence or argument that Tiffany Rusher could not be arrested and removed from McFarland Mental Health Center without the consent of McFarland staff.

## ARGUMENT

Tiffany Rusher was housed at McFarland Mental Health Center beginning in May 2016. On December 14, 2016, a warrant was issued for her arrest on a charge of assault. On December 15, 2016, police arrived at McFarland to execute the warrant and take Ms. Rusher into custody. McFarland medical staff prepared discharge papers for Ms. Rusher, and police arrested Ms. Rusher and drove her to the Sangamon County jail, which then took custody of her. The defendants appear prepared to make a major sideshow out of this straightforward series of events to argue that McFarland staff could not handle Ms. Rusher and therefore had her arrested. McFarland was a state mental health hospital of "last resort," and the ultimate point of the defendants' argument appears to be that there was no place for Ms. Rusher except the isolation cell in which they confined her until she killed herself.

The defendants' contention is against the great weight of the evidence. But setting that aside, in this motion Plaintiff seeks to bar defendants from making a specific argument in support: Plaintiffs ask the court to bar the defendants from arguing or suggesting that McFarland staff had power under the law to prevent Ms. Rusher's arrest—*i.e.*, that they had authority of any kind to resist Ms. Rusher's arrest and removal from McFarland when the police arrived to execute the arrest warrant. In fact McFarland medical staff had no such power, because no such power exists. The police appear to have accommodated McFarland and Ms. Rusher to the extent that they allowed McFarland medical staff to prepare a discharge summary for Ms. Rusher

before the police seized her and transported her from McFarland to the jail. But that fact cannot be used to argue that McFarland medical staff somehow had power to authorize the arrest, or withhold their consent to the arrest and thereby prevent it from occurring.

McFarland staff had no such power, because no such power exists—indeed defendants have cited no such authority of any kind. Rather, the state of the law was summarized accurately by Dr. Ajay Jeetwani, who was Ms. Rusher's lead medical provider at McFarland and prepared her discharge summary. As he explained in his deposition, after the charges were filed, "Sangamon County wanted to pick her up," ECF 187-1 at 205:6-7 (emphasis added), and while he technically "sign[ed] off" and "agree[d]" on Ms. Rusher's transfer to the Jail, he "had to" do so, because "from a legal standpoint, you know, if they wanted her in Sangamon County, they want her in Sangamon County." *Id*. at 208:4-19. As Dr. Jeetwani testified, he "did not have the power" to stop the transfer, because "[s]he was charged. They wanted to take her to jail. . . . There is no discussion of that. There is no argument there." *Id.* 208:15-209:4. In this light, he testified, the "discharge summary" was simply a document he prepared to ensure Ms. Rusher's continuity of care—not a document indicating that he approved of or agreed with her removal from McFarland. *Id.*

Dr. Jeetwani's testimony was accurate: McFarland medical staff had no legal authority to resist or block Ms. Rusher's arrest. Plaintiff respectfully moves the Court to bar defendants from suggesting otherwise at trial.

WHEREFORE, Plaintiff respectfully requests an Order *in limine* to exclude evidence or argument that Tiffany Rusher could not be arrested and removed from McFarland Mental Health Center without the consent of McFarland staff.

**PLAINTIFF'S TWELFTH MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR
DISCUSSION OF THE "KILLIAN" FORENSIC OPINION**

Plaintiff moves this Honorable Court *in limine* to bar testimony regarding the "*Killian*"
forensic report, or introduction of the report itself.

## ARGUMENT

During her detention at the Sangamon County Jail, Ms. Rusher was given a forensic
psychological examination, by an outside physician named Dr. Killian. Dr. Killian prepared a
report in which he explained his findings regarding Ms. Rusher's mental functioning and
concluded that as a legal matter she was competent to stand trial. *See* Ex. __. The defendants
have placed the Killian report on their exhibit list and have identified Dr. Killian as a witness.

The use of the Killian report should be sharply curtailed, and the fact that Dr. Killian
ultimately concluded that Ms. Rusher was legally competent to stand trial should be excluded
altogether. A technical finding of legal competency to stand trial does not negate serious mental
illness. As such the introduction of that conclusion would be unduly prejudicial if presented to a
lay jury that is not equipped to assess the significance of such evidence. Fed. R. Evid. 403.
Plaintiff reviews the anticipated uses of the Killian report herein.

***Reliance on Killian report by jail officials***. Defendants' expert Sean Stewart offered the
opinion that it was reasonable for Jail officials to rely on Dr. Killian's evaluation finding that Ms.
Rusher was competent to stand trial. This opinion was entirely unexplained, and it lacked a basic
foundation that the jail officials even know of the existence of the Killian report; the Court
barred Mr. Stewart from offering the opinion at trial. ECF 269 at 11. There is no expert
testimony justifying reliance by jail officials on the Killian report in their placement decisions (or
any evidence that they knew of the report at all). Thus, the defendants should be barred from
introducing or arguing from the report that jail officials were reasonable in their placement

decisions.

    ***Placement in psychiatric care***.  Dr. Fowlkes cites the competency finding in the Killian Report for the proposition that "[i]t would be difficult, if not impossible, for a competent person with criminal charges who had been discharged from a state mental health facility to return to a mental health treatment facility without a court order or a significant deterioration in their mental condition."  (Fowlkes Rpt. at 10-11.)  The Court excluded a similar opinion by Dr. Jarvis, *see* ECF 269 at 5, and it should exclude this opinion by Dr. Fowlkes as well, as it lacks foundation and would purport to instruct the jury on the law surrounding commitment to mental health facilities in Illinois. Testimony from Dr. Jarvis that Dr. Killian's finding prevented Ms. Rusher's transfer to a mental health treatment facility should be excluded.

    ***GAF Score***. Defendants' expert Ms. James, LCSW, refers to the Killian report in assessing the appropriateness of Mr. Shmikler's GAF score for Ms. Rusher. (James Rpt. at 5-6.) A GAF score is a Global Assessment of Functioning. Ms. James opines that Mr. Shmikler's rating of 60 on the GAF scale was appropriate, because Dr. Killian found Ms. Rusher competent to stand trial. *Id*. Mr. Shmikler gave GAF scores multiple times through Tiffany's incarceration. Dr. Killian assessed Ms. Rusher once, during a brief interview on a single day. And there is no evidence that Mr. Shmikler was aware of Dr. Killian's assessment. Any minimal probative value of this opinion is substantially outweighed by the risk of confusing the issues and misleading the jury.

    WHEREFORE, Plaintiff respectfully requests this Court bar testimony regarding the "*Killian*" forensic report, or introduction of the report itself, and any testimony regarding Ms. Rusher's competence to stand trial.

**PLAINTIFF'S THIRTEENTH MOTION *IN LIMINE* TO EXCLUDE REFERENCE TO TIFFANY RUSHER AS A "PSYCHOPATH," "INMATE," OR "OFFENDER"**

Plaintiff moves this Honorable Court *in limine* to exclude reference to Tiffany Rusher as a "psychopath," "inmate," or "offender". Reference to Ms. Rusher as a "psychopath", "inmate", or "offender" can inflame the jury and unduly prejudice Plaintiff.

## ARGUMENT

Under Rule 401, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Unless otherwise provided by law, relevant evidence is admissible and irrelevant evidence is not. Fed. R. Evid. 402. Relevant evidence remains subject to the restrictions of Rule 403, which states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Defendants expert Dr. Jarvis calls Ms. Rusher a "psychopath" which he describes as the vernacular term for an individual diagnosed with antisocial personality disorder. (Ex. 7, Jarvis rpt. at 3.) Any reference to Ms. Rusher as a "psychopath" is medically inaccurate and wildly inflammatory. Jurors may associate Ms. Rusher with criminals who have high propensities for violence, such as serial killers or mass murderers. Such a loaded word would prejudice the jury against Plaintiff. It must therefore be excluded.

In a similar vein, the words "inmate" and "offender" are loaded descriptors to reduce an incarcerated person to their status, rather than who they are as a person. Correctional staff often call people "offenders" and "inmates" in an attempt to portray people as what they have been convicted of. Here, jurors can be prejudiced against Plaintiff if Ms. Rusher is described as an

"inmate" or an "offender" because of the associations with those words. But those words are especially inapplicable to Ms. Rusher, because she was not convicted of a crime. Under the U.S. Constitution, a person is innocent until they are proven guilty. "Inmate" however, insinuates convict. "Offender" likewise means someone who has committed an offense, and Ms. Rusher had not had a trial on the charges pending at the time of her death. Therefore, the descriptors "offender" and "inmate" should not be used to refer to Ms. Rusher because she was not convicted, and the assumptions associated with those words are prejudicial.

WHEREFORE, Plaintiff respectfully requests an Order *in limine* to exclude any reference to Ms. Rusher as a "psychopath," "inmate," or "offender".

**PLAINTIFF'S FOURTEENTH MOTION *IN LIMINE*
TO BAR EVIDENCE OF FUTURE SUICIDALITY**

Plaintiff moves this Honorable Court *in limine* to bar any evidence of Ms. Rusher's future suicidality. This evidence is purely speculative and substantially likely to confuse the issues in the case and mislead the jury and should therefore be excluded. In support Plaintiff states the following:

**ARGUMENT**

Plaintiff anticipates that defendants will try to elicit testimony at trial that had Ms. Rusher not died by suicide in March 2017, she would have died by suicide on some unknown date in the future. But no witness can predict the future and thus no witness has personal knowledge of Ms. Rusher's future suicidality after her release from jail. Any such testimony is speculative and prohibited by Federal Rule of Evidence 602.

What is more, speculation about her future suicidality does not bear upon the issues in the case: defendants' liability for protecting her while she was in their care. Fed. R. Ev. 401, 402. And any minimal probative value of such speculation is substantially outweighed by the risk of undue prejudice, confusing the issues and misleading the jury. Fed. R. Ev. 403. Regardless of any actions Ms. Rusher would or would not have taken once she was no longer jailed, defendants had a duty to protect her as long as she was in their custody. A juror who hears witnesses testify that Ms. Rusher would have died by suicide after her release is likely to be misled about defendants' duty to protect Ms. Rusher while she was in custody.

Any evidence Ms. Rusher would have committed suicide at some unknown future date is purely speculative and likely to confuse and mislead the jury and should therefore be excluded.

WHEREFORE, Plaintiff respectfully requests this Court exclude any evidence of Ms. Rusher's future suicidality.

**PLAINTIFF'S FIFTEENTH MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF
LACK OF PREVIOUS SUICIDES AT SANGAMON JAIL**

Plaintiff moves this Honorable Court *in limine* to exclude evidence of a lack of previous suicides at Sangamon County Jail because it is substantially more prejudicial than probative and will confuse the jury.

## ARGUMENT

Evidence is relevant if it has any tendency to make a fact more or less probable, and the fact is of consequence in determining the action. Fed. R. Evid. 401. All relevant evidence is admissible unless otherwise provided by law. Fed. R. Evid. 402. This Court has the discretion to exclude relevant evidence if "its probative value is substantially outweighed by a danger of… unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Plaintiff anticipates Defendants may attempt to introduce evidence that no prisoner had died by suicide at the Sangamon County Jail before Tiffany Rusher in support of an argument that her death was not reasonably foreseeable and their policies and procedures were constitutionally adequate. This type of argument was rejected in *Woodward v. Correctional Services*, where a jury found that Correctional Services and its agents acted with deliberate indifference to a Lake County inmate who hung himself. 368 F.3d 917, 920 (7th Cir. 2004). Defendants appealed, arguing that Plaintiff's failure to introduce other suicides besides the decedent's meant they failed to prove a custom or practice sufficient to rise to deliberate indifference. *Id*. at 929. The Seventh Circuit disagreed, reasoning "CMS does not get a one free suicide pass". *Id*. (internal quotations omitted) (citing *Bd. of Cty. Comm'rs of Bryan Cty. Okl. V. Brown*, 520 U.S. 397, 409 (1997)). Evidence of a single federal rights violation is sufficient to "trigger municipal liability if the violation was a highly predictable consequence of the

45

municipality's failure to act." *Id*. at 929. (internal quotations omitted).  The Seventh Circuit noted there was a combination of repeated failures to ensure the decedent's safety, coupled with a culture of permission and condoned violations of policies that rose to the level of deliberate indifference. *Id*. "That no one in the past committed suicide simply shows that [Defendants were] fortunate, not that it wasn't deliberately indifferent." *Id*.

Tiffany Rusher's tragic death being the sole suicide at Sangamon County Jail is not enough to preclude liability for Defendants. Evidence of a lack of prior suicides would consequently only confuse the issues, mislead the jury, and prejudice Plaintiff. The risk of confusion and prejudice substantially outweighs the probative value of such evidence. It must therefore be excluded.

WHEREFORE, Plaintiff respectfully requests this court exclude evidence of a lack of previous suicides at the Sangamon County Jail.

**PLAINTIFF'S SIXTEENTH MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF ALLEGATIONS OF ABUSE BY DECEDENT'S FATHER**

Plaintiff moves this Honorable Court *in limine* to prohibit any testimony or reference to allegations of child abuse by Tiffany's father, Richard Rusher Sr., pursuant to Federal Rules of Evidence 401, 402, 403 and 404.

## ARGUMENT

Under Rule 401, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Here, whether Richard Rusher Sr. abused Tiffany as a child is not relevant to any of the issues in the case, which involves her treatment while confined in the Sangamon County Jail. Thus evidence of such allegations is not only irrelevant, but highly prejudicial, and inadmissible prior bad acts evidence. Fed. R. Evid. 401, 402, 403, and 404. There is no evidence Mr. Rusher Sr. was ever charged with or convicted of any type of child abuse. And any such acts were alleged to have occurred over a decade prior to the events in this case.

Unless otherwise provided by law, relevant evidence is admissible and irrelevant evidence is not. Fed. R. Evid. 402. Relevant evidence remains subject to the restrictions of Rule 403, which states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Evidence of allegations of such abuse, remote in time and not related at all to her confinement in the Sangamon County Jail, would only serve to confuse the issues, mislead the jury, and waste time.

Further, Rule 404(b) prohibits evidence of prior crimes, wrongs, or other bad acts to prove either character or propensity. This includes alleged prior bad acts of non-parties. *Agushi v. Duerr*, 196 F.3d 754, 760-61 (7th Cir. 1999). Evidence of unproven allegations of child abuse by Tiffany's father are squarely within the prohibition against evidence of prior bad acts.

WHEREFORE, Plaintiff respectfully requests this Court to prohibit any evidence of allegations of child abuse by Richard Rusher Sr.

.

**PLAINTIFF'S SEVENTEENTH MOTION *IN LIMINE* TO EXCLUDE REFERENCE TO TIFFANY RUSHER'S LIFETIME EARNINGS**

Plaintiff moves this Honorable Court *in limine* to bar any reference that Defendants might offer concerning Tiffany Rusher's lifetime earning potential. Defendants have filed a motion *in limine* to bar Plaintiff from discussing certain damages calculations. Dkt. 233. Part I of that motion seeks to bar evidence of "any past or future lost wages, because such evidence would be entirely speculative." Dkt. 233. Plaintiff joins that portion of defendants' 6th motion *in limine* and asks that this Court bar all parties from mentioning, referring to, inferring, suggesting, or otherwise attempting to convey before a jury at any time during these proceedings evidence concerning Tiffany Rusher's past earnings or potential future earnings because such evidence is speculative and unduly prejudicial.

## ARGUMENT

To recover for loss of earnings, testimony must not be "speculative, remote, or uncertain." *Christou v. Arlington Park-Washington Park Race Tracks Corp.* (1982), 104 Ill.App.3d 257, 260, 60 Ill. Dec. 21, 432 N.E.2d 920. Evidence to establish lack of earning potential also cannot be speculative, remote, or uncertain. A proper measurement of potential future earnings is based on earning capacity, rather than actual earning history. *See Singh v. Air Illinois, Inc.,* 165 Ill. App.3d 923, 930 (1st Dist. 1998); *American Nat'l Bank and Trust Co. of Rockford v. Bourland*, 65 Ill.App.3d 977, 980 (2d dist. 1978)(permitting a jury to consider what the decedent earned or might reasonably be expected to earn in the future). Without that proper measurement, any estimation concerning what a decedent might or might ***not*** have earned is entirely too speculative to be introduced as evidence.

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R.

Evid. 401. Unless otherwise provided by law, relevant evidence is admissible and irrelevant evidence is not. Fed. R. Evid. 402. Relevant evidence remains subject to the restrictions of Rule 403, which states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Ms. Rusher's future earning potential is irrelevant. Plaintiff has no intention of introducing it at trial, because Plaintiff is not seeking damages for that potential. Plaintiffs concede it is too speculative to argue.

In Defendants' motion *in limine* 6, they point to Ms. Rusher's history of drug abuse and sex work as evidence of her lack of prior earnings. Dkt. 233. at 3. Plaintiff agrees that this evidence is not relevant and will not seek to introduce it. It is also substantially more prejudicial than probative, and thus should be barred at trial.  The average lay person might hold a bias against people who have used drugs in the past or engaged in sex work. Thus, testimony regarding Ms. Rusher's past with drug use or sex work is unfairly prejudicial to Plaintiff's case and must be excluded.

WHEREFORE, Plaintiff respectfully requests this court prohibit any testimony regarding Ms. Rusher's potential future or past earnings.

**PLAINTIFF'S EIGHTEEN MOTION *IN LIMINE* TO LIMIT DEFENSE EXPERT
OPINIONS TO OPINIONS OFFERED IN WRITTEN REPORTS**

Plaintiff moves this Honorable Court *in limine* to limit Defense expert opinions to

opinions offered in written reports only.

## ARGUMENT

An expert must disclose their intended testimony in a written report that contains "a

complete statement of all opinions to be expressed and the basis and reason for them," including

"the data or other information considered". Fed R. Civ. P. 26(a)(2)(b)(i),(ii). The expert rules are

designed to ensure that both sides are adequately prepared for trial, and there are not any

surprises. *See Sherrod v. Lingle*, 233 F.3d 605, 613 (7th Cir. 2000); *see also McCloud v.

Goodyear Dunlop Tires North America, ltd.*, 2007 WL 2584250, at *2 (C.D. Ill. 2007) (denying

plaintiff's motion to exclude or limit defendant's expert's testimony because Plaintiff had time to

prepare for trial and there was "no surprise.") If a party fails to disclose all information per Rule

26's requirements, "the party is not allowed to use that information" at trial unless the party can

prove "the failure was substantially justified or harmless" Fed. R. Civ. P. 37 (c)(1). "The

sanction of exclusion is thus automatic and mandatory unless the party to be sanctioned can

show that its violation of Rule 26(a) was either justified or harmless." *Finley v. Marathon Oil

Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996).

Defendants have produced expert witness reports in this case. (See Exhibits _____).

Those reports contain opinions of Defendants' experts, and this Court has already ruled on their

admissibility. Dkt. 269. Any testimony Defense experts intend to offer at trial should be captured

fully in their written reports. Any testimony that is offered at trial that is not contained in

Defendants' experts' written report should be excluded. Plaintiff will be prejudiced if

Defendants' experts offer new opinions that Plaintiff cannot adequately prepare for because

Plaintiff is not aware of said testimony. The rules are designed to ensure there is no surprise at trial for either Plaintiff or Defendant, and thus this Court must limit Defense expert opinions to those previously offered in written reports and exclude any opinions not previously disclosed.

WHEREFORE, Plaintiff respectfully requests that this court limit Defense expert testimony to opinions previously offered in written reports.

**PLAINTIFF'S NINETEENTH MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF THE IDENTITIES OF ANY BENEFICIARIES TO TIFFANY RUSHER'S ESTATE**

Plaintiff moves this Honorable Court *in limine* to prohibit any testimony or reference to identities of the beneficiaries of Tiffany Rusher's Estate, pursuant to Federal Rules of Evidence 401, 402, and 403. The identities of the beneficiaries of Ms. Rusher's estate are not relevant to any issue in this case and such evidence is likely to confuse or mislead the jury.

Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Here, if monies are paid into Ms. Rusher's estate as a result of a verdict or settlement in this case, the living persons who are beneficiaries of that estate are not relevant in any manner to the material issues at stake in this case—*viz.* whether the defendants' actions or inactions caused Ms. Rusher's injuries, whether the defendants are liable for their conduct, and the magnitude of Ms. Rusher's damages. *See Sabratek Liquidating LLC v. KPMG LLP*, No. 01 C 9582, 2003 U.S. Dist. LEXIS 20687, at *15-16 (N.D. Ill. Nov. 18, 2003) (excluding evidence of beneficiaries because such evidence had no bearing on the material facts at issue). Given that evidence about the identities of the beneficiaries of the estate has no relevance to Plaintiff's claims, the only effect of introducing that evidence would be to risk inducing prejudice by the jury, either in favor of or against the beneficiaries.

WHEREFORE, Plaintiff respectfully requests that this Court bar introduction of evidence or argument regarding the identities of the beneficiaries of Tiffany Rusher's estate.

## PLAINTIFF'S TWENTIETH MOTION *IN LIMINE* TO PROHIBIT SPECULATIVE TESTIMONY FROM WITNESSES WITHOUT PERSONAL <u>KNOWLEDGE</u>

Plaintiff moves this Honorable Court *in limine* to prohibit testimony from any witness that they "would remember" or "would have remembered" if something happened or "would have" done something in response to a specific event they cannot recall. This type of testimony is not based on personal knowledge and thus violates Federal Rule of Evidence 602. It invites the jury to speculate and should be barred at trial.

## ARGUMENT

This court should not allow testimony in the form of "would have" responses; that is, testimony that witnesses would remember or would have remembered if a specific event occurred or did not occur, or that they would have acted in a specific way if a certain event did or did not occur. Rule 602 permits witnesses to testify to his or her actual memories of events, subject to cross-examination. The jury can then weigh the evidence and determine its worth. But testimony framed as "would remember" or something similar is an attempt to manufacture evidence that does not exist: affirmative testimony of the absence or existence of a certain event when the truth is that the witness has no memory one way or the other. This is improper testimony. Defendants should not be permitted to call witnesses who have no recall only to adduce speculation that their lack of recollection is actually proof of the thing they do not recall. *See Nelson v. City of Chicago*, 810 F. 3d 1061, 1072-75 (7th Cir. 2016) (prohibiting inferences of a party's conduct where witness disclaimed recollection absent proof of habit).

Such testimony is speculative and not based on personal knowledge. *see* Fed. R. Evid. 602 (requiring a witness giving testimony on a matter to have personal knowledge about the matter). The Seventh Circuit addressed this type of testimony in *Nelson*. There, the defendant officer admitted that he had no personal recollection of the events at issue in the case. 810 F. 3d at  . Despite that fact,

the officer testified about circumstances that "would have" led him to behave as he did toward the plaintiff. *Id.* at 1072-73. The Seventh Circuit found that the defendant's testimony was improper because it "invite[d] the jury to speculate that [the plaintiff] acted in the ways [the defendant] described" without having any actual recollection of the events. *Id.* at 1074-75.

Here, witnesses should not be allowed to speculate about what they would remember or would have done. The Court should bar this testimony.

WHEREFORE, Plaintiff respectfully requests this Court exclude any speculative testimony by defense witnesses about what they would have done.

## PLAINTIFF'S TWENTY FIRST MOTION *IN LIMINE*
## TO BAR DEFENDANTS' "GOOD CHARACTER" EVIDENCE

Plaintiff moves this Court to bar Defendants' commendations, awards, complimentary history, promotions, or performance reviews. In support thereof, Plaintiff states as follows:

Defendants may seek to introduce evidence of their "good character" by reference to prior work-related commendations, awards, complimentary history, promotions, or performance reviews. Plaintiff objects to any attempt to interject good character evidence into the trial. Rule 404(a) could not be clearer that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Fed. R. Evid. 404(a). Evidence of commendations, awards, and the like cannot possibly be relevant to an issue in this trial other than to suggest that Defendants conducted themselves as model officers. *See, e.g., Zephrine v. Prince George's County*, No. AW–02–1796, 2007 WL 5445450 at *1 (D. Md. Feb. 1, 2007) (police award was improper "good character" evidence under Rule 404). The evidence is irrelevant for that purpose *per se*.

WHEREFORE, Plaintiff respectfully moves this Court for an order barring references to Defendants' commendations, awards, complimentary history, promotions, or performance reviews.

**PLAINTIFF'S TWENTY-SECOND MOTION *IN LIMINE* TO BAR JAIL EMPLOYEES AND POLICE OFFICERS FROM WEARING JAIL OR POLICE ATTIRE, BADGES, OR MEDALS DURING TRIAL**

Plaintiff moves this Court to prohibit Defendants from wearing law enforcement or detention center uniforms, badges, or medals during the trial. In support thereof, Plaintiff states as follows:

Plaintiff in this matter is an ordinary civilian seeking redress for the wrongs inflicted on her by state actors. Although all parties are equal before the law, if Defendants appear in law enforcement or detention center uniforms or with badges or medals, the jury may be subliminally influenced to credit their testimony as such clothing constitutes impermissible character evidence. *See,* Fed.R.Evid. 404(a). Although the influence of law enforcement uniforms is difficult to quantify, it is wise to avoid any unnecessary risk of prejudice that uniforms, badges, or medals may create. *Bemben v. Hunt*, No. 93-cv-509, 1995 WL 27223 at *4 (N.D. Ill. Jan. 23, 1995) (acknowledging that the influence of uniforms is unknown and requiring police officers to appear in plain clothes to avoid undue influence over the jury). For their part, Defendants would suffer no prejudice by being required to wear civilian dress like all other witnesses. Because the jury must not decide the case "on the basis of a factor unrelated to the issues properly before it," the Court should not permit Defendants to wear police or jail employee attire, badges, or medals during trial. *Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 110, 1134 (4th Cir. 1988).

WHEREFORE, Plaintiff respectfully requests an Order *in limine* prohibiting any police officer party or witness from wearing police attire, detention center attire, badges, or medals in the courtroom during trial.

**PLAINTIFF'S TWENTY-THIRD MOTION *IN LIMINE*
<u>TO BAR REFERENCE TO JURORS AS TAXPAYERS</u>**

Plaintiff hereby moves the Court *in limine* to bar argument relating to or referencing jurors' pecuniary interest in this matter, including arguments to jurors relating to their status as taxpayers or references to the financial condition of the Sangamon County Sheriff's Office and/or Sangamon County.

Arguments that appeal to jurors' pecuniary interests as taxpayers are "of course" generally improper.  *See Moore ex rel. Estate of Grady v. Tujela,* 546 F.3d 423, 429 (7th Cir. Oct. 6, 2008) (declaring the following argument improper: "The city is not a random amorphous entity.  It's you.  We're talking about tax dollars here."). *See also Gomez v. Schoenbeck,* No. 3:16-CV-291-NJR-GCS, 2019 WL 3887128, at *3 (S.D. Ill. Aug. 19, 2019) (citing *Moore* for the rule that "[t]he Seventh Circuit has held that it is unacceptable to make arguments that play on jurors' pecuniary interests," and granting motion to "bar argument relating to or referencing jurors' pecuniary interest in this matter, including arguments to jurors relating to their status as taxpayers or references to the financial condition of the State of Illinois, Randolph County, and/or Knox County."). All such argument should be barred.

WHEREFORE, Plaintiff respectfully requests an order barring all arguments appealing to jurors as taxpayers.

**PLAINTIFF'S UNOPPOSED TWENTY-FOURTH MOTION *IN LIMINE* TO BAR
REFERENCES TO PLAINTIFF'S ATTORNEYS AS "OUT OF TOWN"**

 Plaintiff moves this Court to enter an Order barring reference to Plaintiff's attorneys as
from "out of town." In support, Plaintiff states as follows:

Plaintiff asks this Court to enter an Order barring counsel for Defendants from referring
to Plaintiff's counsel as being from out of town. Any such argument would be completely
irrelevant to Plaintiff's claims and highly prejudicial to her, as it would inappropriately appeal to
any jurors who would tend to favor local attorneys over out-of-town attorneys. Plaintiffs have
conferred with Sangamon County and ACH Counsel, and all Defendants do not oppose this
motion.

Plaintiff's counsel has had no difficulty obtaining such an order in other cases in this
Circuit and requests the same here. *See, e.g., Ott v. City of Milwaukee*, No. 09 C 0870, 2015 WL
1219587, at *3 (E.D. Wis. Mar. 17, 2015); *Avery v. City of Milwaukee*, No. 11 C 0408, 2015 WL
247991, at *5 (E.D. Wis. Jan. 20, 2015); *Lemons v. City of Milwaukee*, No. 13 C 1331, Dkt. No.
192 (E.D. Wis.).

WHEREFORE, Plaintiff respectfully requests that the Court enter an order barring
reference to Plaintiff's attorneys as from "out of town."

**PLAINTIFF'S TWENTY-FIFTH MOTION *IN LIMINE* TO BAR REFERENCES TO CLAIMS NO LONGER IN THE CASE AND FACT THAT INDIVIDUALS WERE FORMERLY OR SHOULD NOW BE DEFENDANTS**

Plaintiff moves this Honorable Court *in limine* to prohibit at trial any testimony or reference to any claims that are no longer in the case or to any individuals who are no longer defendants or could or should have been named as defendants.

The jury in this case may hear from one or more witnesses who were but are no longer defendants, and may hear testimony about others who are not defendants. Though plaintiff has not settled with any party at this time, it is not unusual for parties to settle individual claims or with individual defendants in the weeks leading up to trial. It would be prejudicial to Plaintiff if the jury were to hear that any such claims had been dismissed or settled, or to hear argument that another person should have been named as a defendant. This type of information would invite unfounded speculation among the jurors about why those individuals and claims are not in the case. *See*, *e.g.*, *Currie v. Cundiff*, 2012 WL 2254372, at *3 (S.D. Ill. June 15, 2012) (granting motion *in limine* "to bar any reference to the fact that any individual was formerly or should be a defendant"); *Markwardt v. McCarthy*, 717 F. Supp. 661, 663 (E.D. Wis. 1989) (granting motions *in limine* to exclude references to former defendants); *see also* Pattern Civil Jury Instruction No. 1.26 (Dismissed/Withdrawn Defendant).  It would be still more prejudicial to Plaintiff if the defense were allowed to "try an empty chair" by suggesting to the jury that former defendants should now be a party to this action. *See Archer Daniels Midland Co. v. Hartford Fire Ins. Co.*, 243 F.3d 369, 371-72 (7th Cir. 2011) (discussing the problem of parties trying the empty chair in a civil case). Whether an individual was previously a defendant or should be named as a Defendant at the time of trial has no probative value to the issues before the jury, which are whether Defendants are liable for the damages that Plaintiff and her daughter have suffered.

WHEREFORE, Plaintiff respectfully requests that any reference at the time of trial to former claims or former defendants, including references in any case captions appearing on exhibits, should be barred.

**PLAINTIFF'S TWENTY SIXTH MOTION *IN LIMINE* TO BAR TAG-TEAM CROSS EXAMINATION OF WITNESSES BY BOTH SETS OF DEFENSE COUNSEL**

Plaintiff moves this Honorable Court *in limine* for an order directing Defendants to designate one primary attorney per witness. In support of her motion, Plaintiff states as follows:

**ARGUMENT**

The individual Defendants are represented by two separate teams of attorneys, but all of Defendants' interests in this case are aligned. It would unnecessarily prolong the trial, to say nothing of the inherent unfairness, to permit counsel for one set of Defendants to duplicate cross-examination areas already covered by counsel for the other set of Defendants. The only fair method is to require the Defendants to do what Plaintiff's lawyers are going to do, namely, designate one primary attorney per witness per cross-examination. If an area or topic exists which was not covered by that defense attorney, counsel for other Defendants could address that discrete area—without repeating cross-examination on topics already covered.

This is the only approach that prevents a free-for-all of redundancy. *United States v. Mills*, 138 F.3d 928, 937 (11th Cir. 1998) (frowning upon "tag team" cross examinations by counsel representing the same interest); *United Nat. Records, Inc. v. MCA, Inc.*, 106 F.R.D. 39, 41–42 (N. D. Ill. 1985) ("tag team" questioning by counsel improper, even at a deposition); *Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica*, 717 F. Supp. 1021, 1027–28 (S.D.N.Y. 1989) ("double teaming" during witness exams is improper).

WHEREFORE, Plaintiff respectfully requests that this Court enter an order directing Defendants to designate one primary attorney per witness.

Dated: January 15, 2022

/s/ Sarah Grady
Sarah Grady
Attorney for Plaintiff

Sarah Grady
Stephen Weil
Isabella Aguilar
LOEVY & LOEVY
311 North Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312) 243-5900
sarah@loevy.com


Bridget Geraghty
UPTOWN PEOPLE'S LAW CENTER
4413 North Sheridan Rd.
Chicago, IL 60640
(773) 769-1411